**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, NY 10036-7203
(212) 972-3000

*Attorneys for Amici Curiae,*
*New York City Bankruptcy Assistance Project,*
*MFY Legal Services, Inc. and*
*New York Legal Assistance Group*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---

Lesley Campbell,

Plaintiff,

v.

Citibank, N.A.; The Student Loan Corporation; Square Two Financial, Inc.; CACH, LLC; and First Step Group, LLC,

Defendants.

---

Case No. 14-45990 (CEC)
Chapter 7

Adv. Proc. No. 15-01038 (CEC)

**BRIEF OF *AMICI CURIAE* NEW YORK CITY BANKRUPTCY ASSISTANCE PROJECT, MFY LEGAL SERVICES, INC. AND NEW YORK LEGAL ASSISTANCE GROUP IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTEREST OF AMICI CURIAE ....... 1

II. FACTUAL BACKGROUND ....... 3

III. ARGUMENT ....... 4

A. Plaintiff's Loan Was Discharged Because It Was Issued by a Private, For-Profit Institution and Not Used to Pay Costs of Attendance at an Eligible Educational Institution. ....... 4

1. Student Loans Incurred from Private, For-Profit Institutions Are Not Excepted From Discharge Under Section 523(a)(8)(A). ....... 4

2. Student Loans Are Not Excepted From Discharge Under Section 523(a)(8)(B) Unless Incurred to Pay Costs of Attendance at an Eligible Educational Institution. ....... 7

B. Public Policy Dictates that the Court Find that Plaintiff's Loan Was Discharged. ....... 10

IV. CONCLUSION ....... 11

# TABLE OF AUTHORITIES

**Cases:**

*Alibatya v. New York Univ. (In re Alibatya),*
178 B.R. 335 (Bankr. E.D.N.Y. 1995)....................9

*Brown v. Rust (In re Rust),*
510 B.R. 562 (Bankr. E.D. Ky. 2014) ....................7

*Burks v. Louisiana (In re Burks),*
244 F.3d 1245 (11th Cir. 2001) ....................5

*Inst. of Imaginal Studies v. Christoff (In re Christoff),*
527 B.R. 624 (9th Cir. BAP 2015)....................7

*Liberty Bay Credit Union v. Belforte (In re Belforte),*
Adv. Pro. No. 10-22742-JNF, 2012 WL 4620987, at *6 (Bankr. D. Mass. Oct. 1, 2012) ....................7

*Local Loan Co. v. Hunt,*
292 U.S. 234 (1934)....................10

*Nunez v. Key Educ. Res. (In re Nunez),*
527 B.R. 410 (Bankr. N.D. Or. 2015)....................6, 8, 9

*Rumer v. Am. Educ. Serv. (In re Jared Rumer),*
469 B.R. 553 (Bankr. M.D. Penn. 2012) ....................8

*Sensient Technologies Corp. v. Baiocchi (In re Baiocchi),*
389 B.R. 828 (Bankr. E.D. Wisc. 2008) ....................7

*Scott v. Midwestern Training Ctr., Inc. (In re Scott),*
287 B.R. 470 (Bankr. E.D. Mo. 2002) ....................5, 6

*United Res. Sys., Inc. v. Meinhart (In re Meinhart),*
211 B.R. 750 (Bankr. D. Colo. 1997)....................9

*U.S. Dept. of Health and Human Services v. Smith,*
807 F.2d 122 (8th Cir. 1986) ....................6, 7

**Statutes:**

11 U.S.C. § 523(a)(8)....................5, 8

20 U.S.C. § 1070....................8

20 U.S.C. § 1087ll....................8

20 U.S.C. § 1088....................8

26 U.S.C. § 25A(f)(2)(A)-(B) .......... 8

26 U.S.C. § 221(d) .......... 8

## I. INTEREST OF AMICI CURIAE

The issue at the core of this proceeding – the extent to which student debt is protected from discharge in bankruptcy – is of critical importance to the low-income New Yorkers served by the New York City Bankruptcy Assistance Project ("NYC BAP"), MFY Legal Services, Inc ("MFY") and the New York Legal Assistance Group ("NYLAG" and, together with NYC BAP and MFY, the "Amici"). NYC BAP, MFY's Low-Income Bankruptcy Project and NYLAG's Consumer Protection Project provide free bankruptcy and consumer debt assistance and representation to residents of New York City who cannot afford an attorney. Increasingly, these individuals are desperate for help to repay so-called student loans, many of which were incurred to pay sham trade schools and other predatory for-profit schools that target low-income individuals. While the Bankruptcy Code protects certain student loans from discharge, debts incurred to pay such ineligible institutions are not entitled to protection. Defendants' overly broad interpretation of the "educational benefit, scholarship or stipend" exception to discharge threatens to deny not only the Plaintiff, but also many other debtors struggling with ineligible student loans, the fresh start to which they are entitled under the Bankruptcy Code.

A sizeable portion of private education-related debt, including Plaintiff's loan incurred to pay Barbri, Inc., is dischargeable. The Bankruptcy Code precisely defines protected student debt in Sections 523(a)(8)(A) ("Section (A)") and 523(a)(8)(B) ("Section (B)"). Section (A) protects only government and non-profit-funded student loans and "benefits, scholarships or stipends," which are not loans but may nevertheless become repayable upon the borrower's noncompliance with certain conditions. Section (B) protects loans issued by private, for-profit institutions, *but only if*, as revealed by following a trail of definitions through the Internal Revenue Code and the Higher Education Act of 1965, such loans were incurred solely to pay the cost of attending an educational institution meeting specific credit hour and other requirements and determined

eligible for Title IV federal assistance. Interpreting "educational benefits" to protect all education-related debts no matter their purpose – whether to attend a sham trade school or a Barbri, Inc. review course – renders meaningless the carefully crafted language of the Bankruptcy Code, the Internal Revenue Code and the Higher Education Act, which limit protection of private, for-profit student loans to those incurred solely to pay eligible educational institutions.

The policy implications of excepting any education-related debt from discharge would be far-reaching. This country faces a looming student debt crisis. Student debt totals over $1 trillion[1], more than auto loan or credit card debt, and is the only consumer debt that has continued to grow since the height of consumer debt in 2008.[2] Over 30% of borrowers have balances ranging from $25,000 to over $200,000, and this debt is increasing rapidly each year.[3] More than 600,000 federal student loan borrowers who entered repayment in 2010 defaulted by 2012.[4] Private student loans are estimated at $165 billion and are disproportionately incurred by those individuals with the highest amount of overall debt.[5] Whether this debt is protected against discharge so long as it can be deemed to confer some educational benefit on its recipient, or

---

[1] CONSUMER FINANCIAL PROTECTION BUREAU, Chopra, Rohit, *Student Debt Swells, Federal Loans Now Top a Trillion* (July 17, 2013), available at http://www.consumerfinance.gov/newsroom/student-debt-swells-federal-loans-now-top-a-trillion/

[2] FEDERAL RESERVE BANK OF NEW YORK, *Student Loan Debt by Age Group* (Mar. 29, 2013), available at http://www.newyorkfed.org/studentloandebt/; FEDERAL RESERVE BANK OF NEW YORK Lee, Donghoon, *Household Debt and Credit: Student Debt* (Feb. 28, 2013), available at http://www.newyorkfed.org/newsevents/mediaadvisory/2013/Lee022813.pdf

[3] Lee, Donghoon, *Household Debt and Credit: Student Debt* (Feb. 28, 2013), available at http://www.newyorkfed.org/studentloandebt/

[4] U.S. DEPARTMENT OF EDUCATION, *Default Rates Continue to Rise for Federal Student Loans* (Sept. 30, 2013), available at http://www.ed.gov/news/press-releases/default-rates-continue-rise-federal-student-loans

[5] CONSUMER FINANCIAL PROTECTION BUREAU, Chopra, Rohit, *Student Debt Swells, Federal Loans Now Top a Trillion* (July 17, 2013), available at http://www.consumerfinance.gov/newsroom/student-debt-swells-federal-loans-now-top-a-trillion/

instead must comply with the current requirements of Section (B), is therefore of timely concern to the Amici.

## II. FACTUAL BACKGROUND

In February of 2009, Plaintiff obtained a loan in the amount of $15,000 from Defendants The Student Loan Corporation and Citibank, N.A., both private, for-profit lending institutions (the "Loan"). The Loan was subsequently sold and assigned, in whole or in part, to the remaining Defendants.

Plaintiff incurred the Loan while a student in her third year at Pace University School of Law ("Pace"). However, the loan was incurred not for attendance at Pace, but for a review course from Barbri, Inc. Such review courses generally consist of one to two months of lectures and other study aids to help individuals prepare for a state bar exam.[6] Defendants do not assert that Barbri, Inc. or its review course is an accredited college or university, offers degrees of any kind, or has otherwise been determined eligible for Title IV federal assistance programs. As such, Barbri, Inc. does not have a federal school code and is not listed on the federal government's list of eligible institutions, available at https://fafsa.ed.gov.

The Loan was among Plaintiff's debts at the time she filed for bankruptcy before this Court on November 26, 2014, listed on Schedule F of her petition as a debt to "Citibank Student Loan" and "CACH, LLC" in the amount of $11,163.00. At no time during the bankruptcy case did Defendants commence an adversary proceeding or otherwise attempt to demonstrate to the Court that the Loan was non-dischargeable. Plaintiff was granted a general discharge on March 11, 2015 (the "Discharge Order"). Plaintiff has not reaffirmed her obligations under the Loan or made any payments thereunder since entry of the Discharge Order. Nevertheless, beginning in

[6] *See, e.g.*, Barbri, Inc. NY Winter 2016 Schedule, available at http://www.barbri.com/files/schedules/ny_w16.pdf

May 2015, one or more of the Defendants have contacted Plaintiff claiming the Loan was not discharged under the Discharge Order and attempted to collect upon the Loan.

Plaintiff commenced this adversary proceeding in March 2015 and filed the First Amended Complaint in August 2015 (the "Complaint"). The Complaint seeks a declaratory judgment that the Loan is a dischargeable consumer debt that was discharged during the Plaintiff's bankruptcy case, and further asserts affirmative claims against the Defendants for violation of the Discharge Order, Fraudulent Misrepresentation, Unjust Enrichment and violations of the Truth in Lending Act based upon Defendants' representations that the Loan was non-dischargeable.

On October 5, 2015, Defendants filed their motion to dismiss the Complaint (the "Motion"), focusing on the argument that the Loan is a non-dischargeable "educational benefit, scholarship or stipend" for purposes Section 523(a)(8)(A)(ii) of the Bankruptcy Code. On November 6, 2015, the Amici, through their undersigned counsel, filed an amended letter request with the Court seeking permission to file this brief as *amici curiae* in opposition to the Motion, which the Court granted on November 10, 2015.

## III. ARGUMENT

### A. Plaintiffs Loan Was Discharged Because It Was Issued by a Private, For-Profit Institution and Not Used to Pay Costs of Attendance at an Eligible Educational Institution.

1. Student Loans Incurred from Private, For-Profit Institutions Are Not Excepted from Discharge Under Section 523(a)(8)(A).

It is undisputed that Plaintiff's Loan was issued by Citibank, N.A. and The Student Loan Corporation, both private, for-profit institutions. Plaintiff's Loan is therefore not protected from

discharge under either of the two subsections of Section 523(a)(8)(A), which apply only to government and non-profit funded debts.

Defendants do not argue that the Loan falls under Section 523(a)(8)(A)(i), which explicitly applies only to loans "made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8)(A)(i). This leaves Section 523(a)(8)(A)(ii), covering "an obligation to repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(i)(ii). Defendants rely exclusively upon this section in the Motion, claiming that the Loan provided educational benefits.

However, this language similarly relates to government and non-profit funded debts, and in fact was intended to apply to student debts that are not loans at all. As originally enacted, the student loan exception protected only government and non-profit funded student loans. In 1990, the "educational benefit, scholarship or stipend" language was added directly to the existing provision, indicating that it, too, protects government and non-profit funds:

> (a) A discharge . . . does not discharge an individual debtor from any debt—
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, *or for an obligation to repay funds received as an educational benefit, scholarship or stipend.*

Pub. L. 101-647 (Nov. 29, 1990) (emphasis added). Benefits, scholarships and stipends are not technically loans and, unlike loans, they often need not be repaid. However, many are conditional and can become repayable upon the borrower's failure to comply with the applicable conditions. This additional language clarifies that an obligation to repay a government or non-profit benefit, scholarship or stipend, although not technically a loan or a benefit overpayment, is also protected from discharge. *See Burks v. Louisiana (In re Burks)*, 244 F.3d 1245, 1246 (11th

Cir. 2001) (affirming non-dischargeability of state government educational stipend where student failed to satisfy obligation to teach in minority school system); *Scott v. Midwestern Training Ctr., Inc. (In re Scott)*, 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002) ("An example of such an obligation would be for funds provided as grants that must be repaid only under certain conditions."). Post-2005, this language acquired its own prong (ii), but still remains under Section (A), separate and distinct from the qualified protection provided to for-profit loans under Section (B). Pub. L. 109-8 (April 20, 2005), 119 Stat. 23; *See also Nunez v. Key Educ. Res. (In re Nunez)*, 527 B.R. 410, 415 (Bankr. N.D. Or. 2015) ("Pre-BAPCPA, the language now included in 523(a)(8)(A)(i) and (ii) was treated as an integrated whole: Not only was it required that the subject obligation be incurred for an educational benefit, scholarship, stipend or loan, but the obligation also had to be incurred to a governmental unit or nonprofit institution. And post-BAPCPA, nothing about that language changed: All that changed was the punctuation."). Therefore, there is no basis to conclude that the benefit, scholarship or stipend prong covers any student debt other than that funded by governments and non-profit institutions.

Legislative history confirms this interpretation. In *U.S. Dept. of Health and Human Services v. Smith*, a student accepted a government scholarship to attend medical school on the condition that he work in a "physician shortage area" after graduation. 807 F.2d 122–123 (8th Cir. 1986). The student received the scholarship funds but did not fulfill the condition. Until the matter reached the Eighth Circuit Court of Appeals, the student successfully argued that the conditional scholarship was not a loan and was therefore dischargeable in his bankruptcy case. The Eighth Circuit reversed, holding that the government scholarship was a non-dischargeable debt. *Id.* at 125. The legislative history reveals that the "benefit, scholarship or stipend" language was added to the statute to codify the holding in *Smith*:

> This section adds to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends. These obligations are often very sizeable and should receive the same treatment as a 'student loan' with regard to restrictions on dischargeability in bankruptcy." See U.S. Department of Health and Human Services v. Smith, 807 F.2d 122 (8th Cir. 1986).

*Fed. Debt Collection Proc. Hearing on Pub. L. 101-647, H. Subcomm. on Econ. & Commercial L., H. Judiciary Comm.*, 101st Cong. 74-75 (1990). Accordingly, Section 523(a)(8)(A)(ii) is not a catch-all category protecting any student debt so long as it was used to confer an educational benefit upon the recipient, but rather applies simply to government and non-profit benefits, scholarships and stipends.[7]

As Plaintiff's Loan is not government or non-profit funded and is not an educational benefit, scholarship or stipend, it was not protected from discharge under Section (A).

2. Student Loans Are Not Excepted from Discharge Under Section 523(a)(8)(B) Unless Incurred to Pay Costs of Attendance at an Eligible Educational Institution.

Although Defendants do not make the argument, neither does Section (B) apply to discharge the Loan. Section (B) is the only section applicable to private, for-profit issued student

[7] None of the courts that have interpreted the "benefit, scholarship or stipend" language more broadly have cited or considered this conclusive legislative history. *See, e.g., Inst. of Imaginal Studies v. Christoff (In re Christoff),* 527 B.R. 624 (9th Cir. BAP 2015); *Brown v. Rust (In re Rust),* 510 B.R. 562, 566 (Bankr. E.D. Ky. 2014) ("[W]e can construe the provision no more narrowly than the language and the legislative history allow.") (internal quotations omitted); *Liberty Bay Credit Union v. Belforte (In re Belforte),* Adv. Pro. No. 10-22742-JNF, 2012 WL 4620987, at *6 (Bankr. D. Mass. Oct. 1, 2012) ("Although § 523(a)(8)(A)(i) requires that the loan be made by a governmental unit or nonprofit institution, § 523(a)(8)(A)(ii) no longer has any such requirement."); *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi),* 389 B.R. 828, 831-32 (Bankr. E.D. Wisc. 2008) (finding debt under for-profit employer's education expense reimbursement program to be non-dischargeable). However, even if the Court were to find that Section 523(a)(8)(A)(ii) protects private, for-profit issued "benefits, scholarships and stipends", the Plaintiff's Loan was none of these. It was not a benefit in that it was not provided by the employer, the state or an insurance company. *See* Oxford English Dictionary (online ed.), Def. 2. Further, unlike a benefit, scholarship or stipend, under the circumstances that existed at the time the funds were issued, the loan was required to be repaid. It had all of the hallmarks of a loan, including a maturity date and an obligation to pay interest on the amount due.

loans. However, the Plaintiff's Loan falls outside the scope of Section (B) because it was incurred to pay for a review course provided by Barbri, Inc., which is not an eligible educational institution.

Section (B) was created in 2004 to protect "any other education loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 11 U.S.C. § 523(a)(8)(B); HR Rep. No. 31, 109th Cong., 1st Sess. 220 (2005)). The Internal Revenue Code ("IRC") defines a "qualified education loan" as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." 26 U.S.C. § 221(d)(1). Qualified higher education expenses are further defined as "the cost of attendance…at an eligible educational institution." *Id.* at § 221(d)(2).[8] Therefore, to be protected under Section (B), a student loan must have been incurred solely to pay the cost of attendance at an eligible educational institution.

Defendants do not argue, as they cannot, that Barbri, Inc. is an eligible educational institution. Such term is defined in the IRC as an institution "which is described in section 481 of the Higher Education Act of 1965…and which is eligible to participate in a program under title IV of such Act." 26 U.S.C. § 25A(f)(2)(A)-(B). The eligible institutions described in the Higher Education Act satisfy credit hour requirements and meet other educational standards. *See* 20 U.S.C. § 1088, Section 481. Students of such institutions must be able to apply for federal aid under Title IV, which generally covers all accredited institutions of higher education. *See* 20 U.S.C. § 1070 ("Title IV—Student Assistance"). In order to determine whether a school is an eligible educational institution, Courts may take judicial notice of the government's list of federal school codes available at https://fafsa.ed.gov. *See In re Nunez*, 527 B.R. at 412 (taking

[8] Cost of attendance is a term of art defined in the Higher Education Act to include tuition, fees and allowances for books, supplies, room and board and other expenses. 20 U.S.C. § 1087ll.

judicial notice of list of school codes and holding that flight school was not an eligible educational institution); *Rumer v. Am. Educ. Serv. (In re Jared Rumer)*, 469 B.R. 553, 562 n.9 (Bankr. M.D. Penn. 2012) (taking judicial notice of list of eligible educational institutions). Barbri, Inc., by contrast, is a private, for-profit corporation offering short term review courses, is not an accredited school, does not offer degrees, and does not appear on the government's list of eligible educational institutions.

Granting an exception to discharge for Plaintiff's loan would fly in the face of Section (B), which expressly excludes such loans, and render the remaining sections of the statute meaningless. As one court has explained, "if any educational loans of any kind are excepted from discharge by 523(a)(8)(A)(ii), what addition does excepting qualified educational loans under the Internal Revenue Code make to the discharge exception? The educational loans excepted from discharge under 523(a)(8)(B) would be no more than a subset of such loans already excepted from discharge under 523(a)(8)(A)(ii)." *In re Nunez,* 527 B.R. at 415; *See also Alibatya v. New York Univ. (In re Alibatya)*, 178 B.R. 335, 338 (Bankr. E.D.N.Y. 1995) ("Defendant blurs distinctions between such excepted categories, blending them under one overarching rubric, namely, educational benefit."); *United Res. Sys., Inc. v. Meinhart (In re Meinhart)*, 211 B.R. 750, 753 (Bankr. D. Colo. 1997) ("Were this Court to accept the Plaintiff's position that the final phrase should be read independently of the former portions of the subsection, the final phrase would subsume the remainder. The former, longer lived portions of Section 523(a)(8) would, therefore, be rendered meaningless. Such a conclusion is contrary to another clear mandate of statutory construction: A statute should not be construed in a way that renders phrases meaningless, redundant, or superfluous.").

As Plaintiff's Loan was issued by a private, for-profit entity and was not incurred to pay the cost of attending an eligible educational institution, it does not qualify for protection under Section (B) and was discharged under the Discharge Order.

**B. Public Policy Dictates that the Court Find that Plaintiff's Loan Was Discharged.**

An essential purpose of the Bankruptcy Code is to provide the "honest but unfortunate debtor" with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). On the other hand, excepting certain student loans from discharge incentives the market to provide affordable educational financing, allowing many individuals who cannot otherwise afford it the opportunity to attend colleges and universities.

This Court's declaratory ruling that Plaintiff's private, for-profit issued student loan was discharged because it was used for an ineligible educational institution is necessary to maintain the proper balance between these two policies. Many clients of NYC BAP, MFY and NYLAG have incurred student loans to unaccredited vocational schools that promised an education or job placement but failed to deliver anything of value. Defendants' position that all education-related debt is excepted from discharge is unfortunately a popular misconception, one that leaves these borrowers struggling to pay these institutions rather than utilizing the bankruptcy protections that are available to them. The Court's ruling will disincentivize for-profit lenders from effectively partnering with ineligible diploma mills and ensure that the student loan exception fosters only true educational opportunity.

## IV. CONCLUSION

For the reasons set forth herein, the Amici respectfully request that this Court find that a private, for-profit issued loan that was not incurred to pay the cost of attendance at an eligible educational institution is dischargeable in bankruptcy.

Dated: November 10, 2015

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: */s/ Stephanie R. Sweeney*
Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, New York 10036-7203
(212) 972-3000

*Attorneys for Amici Curiae, New York City Bankruptcy Assistance Project, MFY Legal Services, Inc. and New York Legal Assistance Group.*