**Brewer Storefront, P.L.L.C.**
William A. Brewer III
wab@brewerattorneys.com
Catherine A. Pastrikos
cap@brewerattorneys.com
Austin C. Smith
aqs@brewerattorneys.com
750 Lexington Ave, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849


## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

Lesley Campbell,

       Plaintiff,

  v.

Citibank, N.A.; The Student Loan
Corporation; Square Two Financial, Inc.;
CACH, LLC; and First Step Group, LLC,

       Defendants.

Case No. 1-14-45990 (CEC)
Chapter 7
Adv. Pro. No. 1-15-01038 (CEC)


## MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...........................................................................................1

II. STATEMENT OF RELEVANT FACTS ........................................................................2

    A.    Plaintiff's Discharged Loan ...........................................................................2

    B.    History Of 11 U.S.C. § 523(a)(8) .................................................................3

III. APPLICABLE LEGAL STANDARDS ........................................................................6

IV. ARGUMENTS AND AUTHORITIES ........................................................................7

    A.    Plaintiff's Claim For Declaratory Judgment That The Loan Is A
           Dischargeable Consumer Loan Should Not Be Dismissed....................................7

          1.    Interpreting "benefit" to include loans would render the rest of the
               statute superfluous. ..............................................................................8

          2.    The principle of *noscitur a sociis* requires that the word "benefit"
               not include loans. .................................................................................9

          3.    Defendants' interpretation is inconsistent with the legislative history
               demonstrating that Congress' purpose in enacting 523(a)(8)(A)(ii) was to
               protect conditional service scholarships and grants....................................9

          4.    The prior rulings of this Court and others recognize that the term
               "educational benefit" in Section 523(a)(8) does not except from
               discharge any loan that provides educational advantages..........................11

    B.    Plaintiff's Claims For Violation Of The Truth In Lending Act, Fraudulent
           Misrepresentation, And Unjust Enrichment Claims Should Not Be
           Dismissed..........................................................................................13

          1.    The representation that the Loan was a non-dischargeable student loan was
               false. ……………………………………………………………………14

          2.    Plaintiff met the pleading requirements...................................................14

          3.    Plaintiff has standing to bring an unjust enrichment claim.......................15

    C.    Plaintiff's Claims For Claims For Violation Of The Truth In Lending Act
           And Fraudulent Misrepresentation Should Not Be Dismissed As Untimely ........16

          1.    Plaintiff's claim for violation of the Truth in Lending Act should
               be equitably tolled.................................................................................16

          2.    Plaintiff's claim for fraudulent misrepresentation is timely. .....................18

V. CONCLUSION……………………………………………………………………20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alibatya v. New York University (In re Alibatya)*,
   178 B.R. 335 (Bankr. E.D.N.Y. 1995) ……………………………………………………16

*Bill Diodato Photography LLC v. Avon Products, Inc.*,
   No. 12 CIV. 847 RWS, 2012 WL 3240428 (S.D.N.Y. Aug. 7, 2012) ...................................24

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir.2004)...................................................................................................21

*Capsolas v. Pasta Res., Inc.*,
   No. 10 CIV. 5595 RJH, 2011 WL 6396511 (S.D.N.Y. June 23, 2011)...................................23

*Caputo v. Pfizer, Inc.*,
   267 F.3d 181 (2d Cir. 2001)...................................................................................................13

*Cardiello v. The Money Store, Inc.*,
   No. 00 CIV. 7332 (NRB), 2001 WL 604007 (S.D.N.Y. June 1, 2001)...................................22

*Childers v. New York & Presbyterian Hosp.*,
   36 F. Supp. 3d 292  (S.D.N.Y. 2014)..............................................................................24, 26

*De Sole v. Knoedler Gallery, LLC*,
   No. 12 CIV. 2313 PGG, 2015 WL 5773847 (S.D.N.Y. Sept. 30, 2015)...............................24

*Ehrlich v. Am. Airlines, Inc.*,
   360 F.3d 366 (2d Cir. 2004)...................................................................................................14

*Gordon Grp. Investments, LLC v. Kugler*,
   115 A.D.3d 433, 982 N.Y.S.2d 18 (2014) .......................................................................23, 26

*Heldman on Behalf of T.H. v. Sobol*,
   962 F.2d 148 (2d Cir. 1992)...................................................................................................21

*Ind. Reg'l Council of Carpenters Joint Apprenticeship & Training Comm. v. Kesler*,
   401 B.R. 356 (Bankr. S.D. Ill. 2009)…………………………………………………...17

*Institute of Imaginal Studies v. Christoff (In re Christoff)*,
   510 B.R. 876 (Bankr. N.D Cal. 2014)…………………………...................................14

*Karnette v. Wolpoff & Abramson, L.L.P.*,
   No. CIV.A. 3:06CV44, 2007 WL 922288 (E.D. Va. Mar. 23, 2007)....................................20

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)........................................................................22

*Lama v. Malik*,
    58 F. Supp. 3d 226 (E.D.N.Y. 2014) ........................................................20

*Liberty Bay Credit Union v. Belforte (In re Belforte)*,
    No. 10-22742-JNF, 2012 WL 4620987 (Bankr. D. Mass. Oct. 1, 2012)……………………10

*Mays v. Shinseki*,
    25 Vet. App. 256 (2012) ............................................................................10

*Nunez v. Key Education Resources (In re Nunez)*,
    527 B.R. 410 (Bankr. D. Or. 2015)………………………………………...............16, 17

*In re Monahan Ford Corp. of Flushing*,
    340 B.R. 1 (Bankr. E.D.N.Y. 2006)...........................................................13

*Roy v. Sallie Mae (In re Roy)*,
    Adv. Pro. No. 08-33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010)………………..17

*Saint-Jean v. Emigrant Mortgage Co.*,
    50 F. Supp. 3d 300 (E.D.N.Y. 2014) ........................................................24

*Scarso v. Briks*,
    909 F. Supp. 211 (S.D.N.Y. 1996) ...........................................................21

*Scott v. Midwestern Training Ctr., Inc. (In re Scott)*,
    287 B.R. 470 (Bankr. E.D. Mo. 2002)………………………………………….....12, 15, 17

*Santa Fe Medical Services, Inc. v. Segal  (In re Segal)*,
    57 F.3d 342 (3d Cir. 1995)........................................................................10

*U.S. Dep't of Health & Human Servs. v. Smith*,
    807 F.2d 122 (8th Cir. 1986) ..............................................................10, 16

*Skipworth v. Citibank Student Loan Corp.* (*In re Skipworth*),
    No. 09-80149-JAC-7, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010)………………...17

*St. John's Univ., New York v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) .................................................24, 26

*United Resource Sys., Inc. v. Meinhart (In re Meinhart)*,
    211 B.R. 750  (Bankr. D. Colo. 1997)………………………………………17

*U.S. Dep't of Health & Human Servs. v. Avila (In re Avila)*,
    53 B.R. 933 (Bankr. W.D.N.Y. 1985)……………………………………………..8

*United States v. Brandon,*
  781 F.2d 1051 (4th. Cir. 1986) ..................................................................16

*United States v. Jicarilla Apache Nation,*
  131 S. Ct. 2313 (2011) .............................................................................14

*Veltri v. Bldg. Serv. 32B–J Pension Fund,*
  393 F.3d 318 (2d Cir.2004).......................................................................22

*Weil v. Long Island Savings Bank, FSB,*
  77 F.Supp.2d 313 (E.D.N.Y. 1999) ..........................................................23

*Yates v. United States,*
  135 S. Ct. 1074 (2015)..............................................................................15

*In re Yerushalmi,*
  393 B.R. 288 (Bankr. E.D.N.Y. 2008).......................................................12

**Statutes**

11 U.S.C. § 523(a)(8) (Supp. 1979).................................................................10

11 U.S.C. § 523(a)(8)(1990) ...........................................................................10

11 U.S.C. § 523(a)(8)....................................................................................*passim*

11 U.S.C. § 523(a)(8)(A)(ii) .........................................................................*passim*

15 U.S.C § 1640 ..............................................................................................22

20 U.S.C. § 1087*ll*.............................................................................................15

26 U.S.C § 25A(f)(2) ......................................................................................15

26 U.S.C. § 221(d) ..........................................................................................15

N.Y. C.P.L.R. 213(8) .................................................................................24, 25

**Other Authorities**

Fed. R. Civ. P. 9(b) .........................................................................................12

Fed. R. Civ. P. 12(b)(6)...................................................................................12

Fed. R. Civ. P. 15(a) .......................................................................................12

Fed. R. Bankr. P. 7009.....................................................................................12

Fed. R. Bankr. P. 7012.....................................................................................12

# I.

## <u>PRELIMINARY STATEMENT</u>

In their Memorandum of Law In Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss"), Defendants Citibank, N.A. ("Citibank") and Student Loan Corporation ("SLC") (collectively, "Defendants") argue that Plaintiff's Bar Exam Study Loan ("Loan") is a non-dischargeable student loan pursuant to Section 523(a)(8)(A)(ii), which excepts from discharge an "obligation to repay funds received as an educational benefit." Assuming the correctness of Defendants' interpretation of 11 U.S.C. § 523(a)(8), Defendants then deny that their representations regarding the Loan's dischargeability or classification violate the Truth in Lending Act.

The Motion to Dismiss must be denied because it is based on a misinterpretation of 11 U.S.C. § 523(a)(8)(A)(ii). Specifically, the word "benefit" in "obligation to repay funds received as an educational benefit" does not mean an "advantage gained from something" but instead refers to a type of educational "payment made by the state, an employer, or an insurance company," specifically, a conditional educational grant. Since the Loan was not a conditional educational grant, it is not an educational benefit. Accordingly, the Loan is not a non-dischargeable student loan but is instead a dischargeable consumer loan. In representing the debt as a non-dischargeable student loan, the Defendants have misrepresented the legal obligations between themselves and the Plaintiff, which is a violation of the Truth in Lending Act and is further redressable by the Plaintiff's common law causes of action.

# II.

## STATEMENT OF RELEVANT FACTS

**A.**    **Plaintiff's Discharged Loan**

In April 2009, Plaintiff contracted with Defendants for a bar review study loan in the amount of $15,000 (the "Loan").[1]  Plaintiff used the funds to attend a Barbri bar review study course in preparation for the New York Bar Examination.[2]  SLC represented this loan to the Plaintiff as a non-dischargeable student loan.[3]  However, Barbri is not a Tile IV eligible institution and, thus, the proceeds from the loan could not be used for qualified education expenses.[4]  Plaintiff dutifully and promptly made payments on the loan until June 2012.[5]  In December 2013, Defendant Citibank assigned the debt to Defendant CACH as a student loan.[6]

In November 2014, Plaintiff sought relief in the United States Bankruptcy Court for the Eastern District of New York.[7]  Plaintiff was granted a general discharge on March 11, 2015.[8]  Since that time, Plaintiff has continued paying down her federal student loans, which were excepted from discharge pursuant to 523(a)(8)(A)(i).[9]  Defendant CACH thereafter resumed

---

[1] *See* Memorandum of Law In Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, at n. 4 (hereafter "Motion to Dismiss") (Plaintiff mistakenly stated that the Loan was originated in February 2009, when the Loan was in fact issued in April 2009) (Doc. # 18).

[2] *See* Plaintiff's First Amended Complaint, ¶ 15. (Doc. # 9).

[3] *See* First Amended Complaint, ¶15; Motion to Dismiss at 4, 9.

[4] *See* First Amended Complaint, ¶ 16.

[5] *See id.,* ¶ 17

[6] *See id.,* ¶ 19.

[7] *See id.,* ¶ 20.

[8] *See* Order Discharging Debtor (the "Order") (Doc. # 10).

[9] *See* First Amended Complaint, ¶ 20.

2

collection efforts, insisting that the Loan was not discharged by the Order because it is a non-dischargeable student loan.[10]

The debt in question, however, is neither a qualified student loan under Section 523(a)(8)(B), an obligation to repay funds received as an educational benefit under Section 523(a)(8)(A)(ii), nor a federal or nonprofit loan under Section 523(a)(8)(A)(i).    Therefore, the Loan was not excepted from discharge under the Bankruptcy Code.

Plaintiff commenced this adversary proceeding in March 2015.[11]    In August 2015, Plaintiff retained counsel, who filed the First Amended Complaint, adding parties and causes of action.[12]    On October 5, 2015, Defendants filed their Motion to Dismiss.[13]

## B.    History Of 11 U.S.C. § 523(a)(8)

Section 523(a)(8) of the Bankruptcy Code was originally enacted in 1978 to prevent discharge of student loans in bankruptcy proceedings.[14]    Since then, it has undergone numerous revisions, three of which are crucial to understanding its current scope.    The first iteration of the statute protected only government or non-profit student loans from discharge.    Specifically, Section 523(a)(8) provided:

(a) a discharge . . . does not discharge an individual debtor from any debt--

---

[10] *See id.,* ¶¶ 22-23.

[11] *See id.,* ¶ 23.

[12] *See* First Amended Complaint.

[13] *See* Motion to Dismiss.

[14] *See U.S. Dep't of Health & Human Servs. v. Avila (In re* Avila*)* 53 B.R. 933, 935 (Bankr. W.D.N.Y. 1985) ("The legislative history of subsection 523(a)(8) indicates that Congress sought to quell the situation where an individual graduated from college owing one or more educational loans and then discharged them through a bankruptcy proceeding without making a good faith effort to repay those loan.").

> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or a nonprofit institution of higher education.[15]

The statute was amended in 1990 to address other forms of governmental education benefits. For instance, the federal government furthers higher education through service scholarships and grants, such as the Montgomery GI Bill and the National Health Service Corps Scholarship.[16] Prior to the 1990 amendments, students who took federal money in the form of these conditional educational scholarships and defaulted on a condition of the obligation (*e.g.,* failing to achieve passing grades) could obtain a discharge under a literal reading of the statute, which restricted discharge of student loans, not defaulted contractual obligations.[17] For this reason, Section 523(a)(8) was amended in 1990 to except from discharge an "obligation to repay funds received as an educational benefit, scholarship, or stipend."[18] After the 1990 amendment, the statute stated:

> (a) a discharge . . . does not discharge an individual debtor from any debt--
>
>> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend.[19]

---

[15] *See* 11 U.S.C. 523(a)(8) (Supp. 1979).

[16] *See Mays v. Shinseki,* 25 Vet. App. 256, 261 (2012) (describing statutory scheme for military educational benefits).

[17] *See U.S. Dep't of Health & Human Servs. v. Smith* (*In re Smith*), Adv. Pro. No. 84-05113, 1985 WL 660512, at *1 (Bankr. D.N.D. June 26, 1985) *subsequently rev'd sub nom. U.S. Dep't of Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986).

[18] *See* Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 Before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990) (Mr. Brooks' Questions for the Record from Mr. Wortham), attached as Exhibit 1.

[19] *See* 11 U.S.C. 523(a)(8)(1990); *Santa Fe Medical Services, Inc. v. Segal* (*In re Segal*), 57 F.3d 342, 347 (3d Cir. 1995) ("Subsection 523(a)(8) was yet again expanded by the Crime Control Act of 1990 . . . Most relevant to this case, however, was the addition of language which prohibited the discharge of 'an obligation to repay funds received as an educational benefit, scholarship, or stipend.'").

This language protected the government from a discharge regardless of whether its financial assistance took the form of student loans or conditional scholarships, benefits or stipends.

In 2005, the statute was amended again.  This amendment added subsection (B), which gave limited protection to private lenders for student loans made for "qualified education expenses" and also bifurcated the original Section 523(a)(8) into two subsections, (i) and (ii). Although the reason for this bifurcation is unclear from the legislative history, it may have been done to release the clause "obligation to repay funds received as an educational benefit" from the requirement that such an obligation be owed to a governmental unit, or nonprofit institution.[20]  In particular, the 2005 amendment changed the language of Section 523(a)(8) to state:

(a) a discharge . . . does not discharge an individual debtor from any debt--

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--

(A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.[21]

As it stands today, Section 523(a)(8) of the Bankruptcy Code excepts from discharge three types of educational debts: (1) governmental or non-profit student loans; (2) conditional

---

[20] This bifurcation would thus enable private institutions and employers to award conditional scholarships, benefits, and stipends that were excepted from discharge in the event the student failed to fulfill her contractual obligations.  *See Liberty Bay Credit Union v. Belforte (In re Belforte)*, Adv. Pro. No. 10-22742-JNF, 2012 WL 4620987, at *6 (Bankr. D. Mass. Oct. 1, 2012) ("Although § 523(a)(8)(A)(i) requires that the loan be made by a governmental unit or nonprofit institution, § 523(a)(8)(A)(ii) no longer has any such requirement.").

[21] *See* 11 U.S.C § 523(a)(8) (2015).

educational grants (*e.g.,* benefits, scholarships, and stipends); and (3) private student loans made for qualified education expenses.

**III.**

**APPLICABLE LEGAL STANDARDS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure applies in this adversary proceeding by virtue of Rule 7012 of the Federal Rules of Bankruptcy Procedure.[22] Under Rule 12(b)(6), a court should grant a motion to dismiss if the moving party can demonstrate the non-moving party's "failure to state a claim upon which relief can be granted."[23] The Court must "read the complaint generously and draw all reasonable inferences in favor of the pleading party."[24]

Under Bankruptcy Rule 7009(b) and Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n all averments of fraud … the circumstances constituting fraud … shall be stated with particularity."[25] The 'circumstances constituting fraud' are "the facts telling when and where the alleged fraud took place, who was involved, the nature of the fraudulent action and how it was accomplished."[26]

Under Federal Rule of Civil Procedure 15(a), incorporated into the Bankruptcy Code at Rule 7015, Plaintiff requests leave to file a Second Amended Complaint in the event this Court finds the First Amended Complaint deficient in some respect.[27] In the Second Circuit, "the court

---

[22] *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012.

[23] *See* FED. R. CIV. P. 12(b)(6).

[24] *See In re Yerushalmi*, 393 B.R. 288, 292 (Bankr. E.D.N.Y. 2008) (citing *Bell Atl. Corp, v. Twombly*, 550 U.S. 544 (2007)).

[25] *See* FED. R. CIV. P. 9(b); Fed. R. Bankr. P. 7009.

[26] *See In re Yerushalmi*, 393 B.R. at 297 (quoting *Parnes v. Gateway* 2000, Inc., 122 F.3d 539, 549–50 (8th Cir. 1997)).

[27] *See* FED. R. CIV. P. 15(a); Fed. R. Bankr. P. 7015.

should freely grant leave to replead when justice so requires."[28]   In fact, "the failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment would be futile."[29]

## IV.

## ARGUMENTS AND AUTHORITIES

### A.    Plaintiff's Claim For Declaratory Judgment That The Loan Is A Dischargeable Consumer Loan Should Not Be Dismissed.

Defendants do not argue that the Loan is a "qualified education loan" exempt from discharge under Section 523(a)(8)(B).  Instead, Defendants argue that Plaintiff is not entitled to declaratory judgment because the Loan was originated for the purpose of funding educational expenses and, therefore, is excepted from discharge by Section 523(a)(8)(A)(ii) as "an obligation to repay funds received as an educational benefit, scholarship, or stipend."[30]  The basis for this argument turns on the proper definition of the word "benefit."  One definition, which Defendants essentially adopt, is  "an advantage or profit gained from something."[31]  Another definition of "benefit," which is more akin to Congress' meaning, is a "payment made by an employer, the state, or an insurance company."[32]  The distinction between these alternative definitions is critically important.   Under the former definition, Section 523(a)(8)(A)(ii) excepts from discharge any debt that provides educational advantages.  Under the latter definition, Section

---

[28] *In re Monahan Ford Corp. of Flushing,* 340 B.R. 1, 20 (Bankr. E.D.N.Y. 2006).

[29] *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 191 (2d Cir. 2001).

[30] *See* Motion to Dismiss, at 8.

[31] *See* Oxford English Dictionary (online ed.).

[32] *See Scott v. Midwestern Training Ctr., Inc. (In re Scott)* 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002) ("The third provision clearly has a plain meaning. It does not need to be construed broadly to except all loans for educational benefits from discharge.  The provision grants protection to 'obligations to repay funds received as an educational benefit.' An example of such an obligation would be for funds provided as grants that must be repaid only under certain conditions (like the failure of a medical student grant recipient to practice in a physician shortage area after graduation).").

523(a)(8)(A)(ii) only excepts from discharge defaulted conditional educational grants (which are themselves types of *payments made by an employer or the state*).  As shown below, the word "benefit" only excepts defaulted conditional educational grants from discharge under Section 523(a)(8)(A)(ii) and, accordingly, provides no protection to private student loans.

1.    **Interpreting "benefit" to include loans would render the rest of the statute superfluous.**

Defendants' interpretation of the provision "obligation to repay funds received as an educational benefit, scholarship, or stipend" would grant to private lenders *absolute* protection for any and all loan products that provide any sort of educational advantage and, in so doing, violates the cannon against superfluity.[33]  For example, there would be no need for Section 523(a)(8)(A)(i), which excepts from discharge federal and non-profit student loans, or Section 523(a)(8)(B), which excepts from discharge qualified private loans, because both sections would be mere subsets and examples of an "obligation to repay funds received as an educational benefit."[34]  Moreover, Section 523(a)(8)(B) provides private lenders only *qualified* protection, which would be rendered unnecessary if all private loans are "benefits."  Specifically, Section 523(a)(8) grants bankruptcy protection for student loan products made to pay for tuition, fees, books, room, and board (as determined by the college or university) at Title IV eligible

---

[33] *See United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2330 (2011) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.").

[34] *See Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 385-86 (2d Cir. 2004) ( "[I]t has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is a reason for rejecting that interpretation.").

institutions of higher learning.[35]   Accordingly, the word "benefit" must be interpreted narrowly in order to avoid rendering the rest of the statute superfluous.

### 2.     The principle of *noscitur a sociis* requires that the word "benefit" not include loans.

The word "benefit" must be defined so as not to include loans because the other listed obligations "scholarship and stipend" in Section 523(a)(8)(A)(ii) are not loans.[36]   The Supreme Court has held that a word in a statute should be defined with reference to the words surrounding it.[37]   All three of the listed alternatives "benefit, scholarship, or stipend" are forms of educational grants and may be defined as "payments made by the an employer, state, or an insurance company," but only "benefit" can be defined as an "advantage gained from something."[38] Neither "scholarships" nor "stipends" are loans (but both are types of educational grants). Accordingly, the principle of *noscitur a sociis* precludes the word "benefit" from being interpreted to include loans.

### 3.     Defendants' interpretation is inconsistent with the legislative history demonstrating that Congress' purpose in enacting 523(a)(8)(A)(ii) was to protect conditional educational grants.

Legislative history demonstrates that Congress used the word "benefit" to mean something other than a loan.   During testimony before the Subcommittee on Economic and

---

[35] These costs constitute the cost of attendance, which is defined as the sum total of a student's *qualified education expenses. See* 26 U.S.C. § 221(d) ("The term 'qualified higher education expenses' means the cost of attendance" as defined in section 472 of the Higher Education Act of 1965 "at an eligible educational institution."); *see also* 20 U.S.C. § 1087*ll* (listing expenses that are included in the cost of attendance); 26 U.S.C § 25A(f)(2) (defining an eligible educational institution as one described in section 481 of the Higher Education Act and eligible to participate in a program under Title IV of the Higher Education Act).

[36] *See Institute of Imaginal Studies v. Christoff (In re Christoff)*, 510 B.R. 876, 882 (Bankr. N.D. Cal. 2014) *aff'd*, 527 B.R. 624 (B.A.P. 9th Cir. 2015), *appeal dismissed* (Aug. 7, 2015) ("Subsection (A)(ii) does not cover loans, but only 'funds received' for an educational benefit, scholarship or stipend.")

[37] *See Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) ("[W]e rely on the principle of *noscitur a sociis* — a word is known by the company it keeps — to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'").

[38] *See* Oxford English Dictionary (online ed.).

Commercial Law, the drafter of the 1990 amendment to Section 523(a)(8), which added the reference to "educational benefit," explained that the new section was designed to except from discharge defaulted governmental service obligations and cited a case demonstrating the need for this amendment.  Specifically, Mr. Wortham testified that:

> This section [523(a)(8)] adds to the list of nondischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends.  These obligations are often very sizeable and should receive the same treatment as a "student loan" with regard to restriction on dischargeability in bankruptcy.  See U.S. Department of Health and Human Services v. Smith, 807 F.2d 122 (8th Cir. 1986) (parentheticals in original).[39]

In amending Section 523(a)(8) to except from discharge "an obligation to repay funds received as an educational benefit, scholarship, or stipend," Congress was addressing the dischargeability of quantifiable sums of money provided by the federal government, including "VA benefits"[40] and "medical service corps scholarships."  These obligations are specific types "payments made by the state" and are incompatible with defining an "educational benefit" broadly to include loans providing "educational advantages."  Indeed, numerous courts have correctly applied the 1990 amendment to Section 523(a)(8) to debts for conditional service scholarships and stipends.[41]  Accordingly, Congress used the word "benefit" to mean something other than a loan.

---

[39] *See* Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 Before the H. Subcomm. on Econ. and Commercial Law , H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990) (Mr. Brooks' Questions for the Record from Mr. Wortham), attached as Exhibit 1.

[40] An educational benefit, such as a VA benefit, may require repayment if the student defaults on a condition of the benefit, such as failing to achieve passing grades in a course being paid for by the VA.  This default thus renders the educational benefit "an obligation to repay funds received as an educational benefit."  *See United States v. Brandon*, 781 F.2d 1051, 1052 (4th. Cir. 1986) ("[T]he United States has a right of recovery against veterans who receive benefits and then fail to earn grades which count towards graduation.").

[41] *See Scott v. Midwestern Training Ctr., Inc. (In re Scott)*, 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002) ("The third provision clearly has a plain meaning. It does not need to be construed broadly to except all loans for educational benefits from discharge.  The provision grants protection to 'obligations to repay funds received as an educational benefit.'  An example of such an obligation would be for funds provided as grants that must be repaid

**4.    The prior rulings of this Court and others recognize that the term "educational benefit" in Section 523(a)(8) does not except from discharge any loan that provides educational advantages.**

Prior rulings of this Court and others have rejected interpreting the word "benefit" to include loans.[42]    In a similar action in this Court,[43] a debtor who owed an unpaid housing obligation to a university was granted discharge of the debt because the court rejected the creditor's interpretation that the housing debt was an "educational benefit."[44]    In its opinion, this Court refused to interpret the term "educational benefit" to protect any "garden variety indebtedness" that a student might incur while attending an educational institution.[45]    More recently, an Oregon Bankruptcy Court applied the Eastern District's rationale in refusing to except from discharge a loan made to attend another type of non-Title IV institution, a for-profit flight school.[46]    That court held that to except from discharge any debt for an "educational benefit" without limitation would render the 2005 Bankruptcy Abuse Prevention and Consumer

---

only under certain conditions (like the failure of a medical student grant recipient to practice in a physician shortage area after graduation)."); *see also Burks v. La., State of, & Bd. of Regents* (*In re Burks*), 244 F.3d 1245, 1246 (11th Cir. 2001) (affirming non-dischargeability of $30,000 worth of educational stipends awarded under the Louisiana Board of Regents' Graduate Fellowship Program for student who defaulted on his obligation to teach in minority school system after receiving his graduate degree).

[42] *See* Oxford English Dictionary (online ed.).

[43] *See Alibatya v. New York University (In re Alibatya)*, 178 B.R. 335, 338 (Bankr. E.D.N.Y. 1995) ("The underlying basis for Defendant's non-dischargeability position is somewhat enigmatic and therefore escapes precise analysis . . . Defendant has sought to place Plaintiff's . . . obligation within virtually every category of excepted educational debt identified in 11 U.S.C. § 523(a)(8). Remarkably, at the same time, Defendant blurs distinctions between such excepted categories, blending them under one overarching rubric, namely, educational benefit.").

[44] Admittedly, *Alibatya* was decided before the 2005 amendments, which expanded the scope of Section 523(a)(8) to include qualified education loans from for-profit creditors.    Nonetheless, *Alibatya* stands for the proposition that the term "educational benefit" should not be construed so broadly as to except any debt providing educational advantages from discharge.

[45] *See Alibatya,* 178 B.R. at 340 ("The purpose of these amendments was not to elevate any garden variety indebtedness that a student may incur to an educational institution, be it cafeteria charges, book store charges, parking lot charges or room and board charges, to the category of excepted educational debt.").

[46] *See Nunez v. Key Education Resources (In re Nunez),* 527 B.R. 410, 416 (Bankr. D. Or. 2015) (holding that loans made to students at non-eligible institutions do not constitute qualified education loans, and are, therefore, not excepted from discharge under Section 523(a)(8)).

Protection Act ("BAPCPA") amendments superfluous and, furthermore, "makes no sense."[47] Other courts have also recognized the logical difficulty of the Defendant's interpretation of the term "educational benefit." Creditors financing education at other non-Title IV eligible institutions such as truck driving schools have sought the same interpretation of 523(a)(8)(A)(ii) in the Bankruptcy Courts and been refused protection for their dischargeable consumer loans because of the illogical result of this interpretation.[48]

As Defendants have shown, some courts have applied an overly expansive interpretation of the phrase "educational benefit."[49] In so doing, those courts protected bar exam loans and loans for childhood tutoring programs because in each instance the loan was construed as a debt providing educational advantages.[50] This interpretation would protect from discharge billions of dollars of consumer loans made by banks to students at unaccredited schools and to students at

---

[47] *See Nunez,* 524 B.R. at 415 ("I see no basis to untether the language in § 523(a)(8)(A)(ii) to apply the student loan exception to discharge to 'all obligations to repay funds received as an educational benefit, scholarship or stipend,' without limitation. Such an interpretation would render § 523(a)(8)(B), the provision that Congress added to § 523(a)(8) in BAPCPA, superfluous and makes no sense. After all, if any educational loans of any kind are excepted from discharge by § 523(a)(8)(A)(ii), what addition does excepting qualified educational loans under the Internal Revenue Code make to the discharge exception? The educational loans excepted from discharge under § 523(a)(8)(B) would be no more than a subset of such loans already excepted from discharge under § 523(a)(8)(A)(ii). Accordingly, I reject the conclusion of some courts that the addition of letter subsection identifiers and a semicolon to familiar language in § 523(a)(8) 'must be read as encompassing a broader range of educational benefit obligations.'").

[48] *See United Resource Sys., Inc. v. Meinhart (In re Meinhart)*, 211 B.R. 750, 753 (Bankr. D. Colo. 1997) ("Were this Court to accept the Plaintiff's position that the final phrase should be read independently of the former portions of the subsection, the final phrase would subsume the remainder. The former, longer lived portions of Section 523(a)(8) would, therefore, be rendered meaningless. Such a conclusion is contrary to another clear mandate of statutory construction: A statute should not be construed in a way that renders phrases meaningless, redundant, or superfluous."); *see also Scott v. Midwestern Training Center, Inc. (In re Scott)*, 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002) ("If the third provision of section 523(a)(8) were interpreted to mean that all educational loans were excepted from discharge then the first two categories (extending an exception to only governmental entities and nonprofit institutions) would certainly be rendered meaningless and superfluous. The third category would subsume the first two provisions and make them completely unnecessary. Such an interpretation is contrary to statutory interpretation and to common sense.").

[49] *See Roy v. Sallie Mae (In re Roy)*, Adv. Pro. No. 08-33318, 2010 WL 1523996, at *1 (Bankr. D.N.J. Apr. 15, 2010); *Skipworth v. Citibank Student Loan Corp. (In re Skipworth)*, Adv. Pro. No. 09-80149-JAC-7, 2010 WL 1417964, at *1 (Bankr. N.D. Ala. Apr. 1, 2010); *Ind. Reg'l Council of Carpenters Joint Apprenticeship & Training Comm. v. Kesler (In re Kesler)*, 401 B.R. 356 (Bankr. S.D. Ill. 2009).

[50] *See Roy,* 2010 WL 1523996, at *1; *Skipworth,* 2010 WL 1417964, at *1; *Kesler,* 401 B.R. at 356.

accredited schools in excess of the "cost of attendance."[51]   As shown above, by adopting the broader definition, courts have violated the cannon against superfluity, allowing a single provision to render the remainder of the statute redundant.  Such an interpretation defies the plain language of the Bankruptcy Code and subverts Congressional intent in developing the financing scheme that underpins the Higher Education Act.   Accordingly, the correct interpretation of the clause "educational benefit" within Section 523(a)(8)(A)(ii) has always been limited to conditional educational grants.

Section 523(a)(8)(A)(ii) excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship, or stipend."  The word "benefit" in that context means a conditional educational grant, not a loan, and certainly not the Loan at issue in this case. Accordingly, the Loan was not excepted from discharge by Section 523(a)(8)(A)(ii).

**B.    Plaintiff's Claims For Violation Of The Truth In Lending Act, Fraudulent Misrepresentation, And Unjust Enrichment Claims Should Not Be Dismissed.**

In counts Four, Six, and Seven of the First Amended Complaint, Plaintiff alleged claims for violation of the Truth in Lending Act, fraudulent misrepresentation, and unjust enrichment. These claims are based on Defendants' misrepresentation of the Loan as a non-dischargeable student loan.  Defendants argue that those claims should be dismissed for failure to state a claim because: (1) any representation that the Loan is a non-dischargeable student loan would be and is true; (2) Plaintiff failed to comply with a heightened pleading standard for fraud; (3) Plaintiff lacks standing to claim unjust enrichment.[52]  Each of these arguments is without merit.

---

[51] *See* 26 U.S.C. § 221(d) ("The term 'qualified higher education expenses' means the cost of attendance" as defined in section 472 of the Higher Education Act of 1965 "at an eligible educational institution.").

[52] *See* Motion to Dismiss at 8-9.

1.    **The representation that the Loan was a non-dischargeable student loan was false.**

As shown above, the Loan is a dischargeable consumer loan, not a non-dischargeable student loan.  In representing that the loan was a non-dischargeable student loan, Defendants have made a false representation regarding the legal status of the loan, and the legal obligations between the parties.[53]  Furthermore, judicial estoppel prevents a party from denying statements made in sworn pleadings.[54]  Defendants, who have reiterated their contention that the Loan is a non-dischargeable student loan in papers filed in this Court,[55] are now judicially estopped from denying that they represented the Loan as a non-dischargeable student loan.

2.    **Plaintiff met the pleading requirements.**

Plaintiff complied with the heightened standard of pleading for fraud and incorporated by reference the date and place on which the original misrepresentation was made, along with the speaker and the nature of the misrepresentation.[56]  In particular, Plaintiff has alleged that Defendants SLC and Citibank misrepresented the Loan as a student loan to Plaintiff in the promissory note dated on April 19, 2009.[57]  Defendants SLC and Citibank misrepresented the Loan as a student loan and an education loan to the national credit reporting agencies in October 2012.[58]  Defendants SLC and Citibank again misrepresented the Loan as a student loan to

---

[53] *See* First Amended Complaint, ¶¶ 15, 50.

[54] *See Karnette v. Wolpoff & Abramson, L.L.P.,* No. CIV.A. 3:06CV44, 2007 WL 922288, at *8 (E.D. Va. Mar. 23, 2007) ("[T]he fundamental concept of judicial estoppel is that a party in a judicial proceeding is barred from denying or contradicting sworn statements made therein.").

[55] *See* Motion to Dismiss at 4, 9.

[56] *See* First Amended Complaint, ¶¶ 15, 50.

[57] *See id.,* ¶ 15.

[58] *See id.,* ¶ 18.

assignee CACH, LLC on December 19, 2013.[59]  In all instances, Plaintiff identified Defendants

Citibank and SLC as the speaker of these misrepresentations.[60]

### 3. <u>Plaintiff has standing to bring an unjust enrichment claim.</u>

Plaintiff possesses standing to bring a claim for unjust enrichment.  Standing requires: (1)

personal injury or threat of injury; (2) that the injury fairly can be traced to the action challenged;

and (3) that the injury is likely to be redressed by the requested relief.[61]  In the instant action,

Plaintiff was injured by being forced to bear the legal and financial consequences of holding,

servicing, and having her credit report reflect indebtedness for a fraudulently classified loan.[62]

But for the Defendant's fraudulent misrepresentation, Plaintiff would not have had her credit

report reflect a non-dischargeable debt and would not have been forced to undertake this

adversary proceeding, which has now consumed almost a year of her life and caused

considerable financial and emotional distress.[63]  This injury may be redressed by requiring the

Defendants to disgorge the profits derived from this misrepresentation.[64]  Under New York law,

to prevail on a claim for unjust enrichment, a party must show that: (1) defendant was enriched;

(2) at the plaintiff's expense; and (3) equity and good conscience mitigate against permitting

defendant to retain what plaintiff is seeking to recover.[65]  In the instant action, it was the Plaintiff

who was forced to bear the legal and financial consequences of the Defendants'

---

[59] *See id.,* ¶ 19.

[60] *See Lama v. Malik,* 58 F. Supp. 3d 226, 237 (E.D.N.Y. 2014) (finding that plaintiff did sufficiently comply with heightened pleading standard for fraud by identifying the speaker, the statement, and where the statement was made).

[61] *See Heldman on Behalf of T.H. v. Sobol,* 962 F.2d 148, 154 (2d Cir. 1992).

[62] *See* First Amended Complaint, ¶¶ 15-18.

[63] *See Scarso v. Briks,* 909 F. Supp. 211, 214 (S.D.N.Y. 1996) (holding that plaintiff was injured by having to initiate a lawsuit to establish her rights under ERISA).

[64] *See* First Amended Complaint, ¶¶ 58-64.

[65]  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir.2004).

misrepresentation.[66]  Plaintiff was injured by this misrepresentation so that the Defendants could

sell the Loan at a higher value than it would have commanded had it been properly labeled and

classified as a dischargeable consumer loan made to a student.    Both "equity and good

conscience require restitution" for the benefit conferred upon the Defendants.[67]

### C.    Plaintiff's Claims For Violation Of The Truth In Lending Act And Fraudulent Misrepresentation Should Not Be Dismissed As Untimely.

In counts Four and Six of the First Amended Complaint, Plaintiff alleged claims for

violation of the Truth in Lending Act and fraudulent misrepresentation.  These claims are based

on Defendants' misrepresentation of the Loan as a non-dischargeable student loan.  Defendants

argue that those claims should be dismissed because they are barred by the applicable statutes of

limitations.  These arguments are without merit.

### 1.    Plaintiff's claim for violation of the Truth in Lending Act should be equitably tolled.

Defendants argue that Plaintiff has failed to state a claim upon which relief can be

granted because the statute of limitations has expired on any claim for violation of Truth in

Lending Act ("TILA").[68]  A claim for TILA has a one-year statute of limitations and accrues at

the time loan is made.[69]  The Loan in this case was made in April 2009.[70]    However, the one

year statute of limitations for TILA[71] should be equitably tolled.

---

[66] *See Scarso v. Briks,* 909 F. Supp. 211, 214 (S.D.N.Y. 1996) (holding that plaintiff was injured by having to initiate a lawsuit to establish her rights under ERISA).

[67] *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

[68] *See* Motion to Dismiss at 9-10.

[69] *See Cardiello v. The Money Store, Inc.,* No. 00 CIV. 7332 (NRB), 2001 WL 604007, at *6 (S.D.N.Y. June 1, 2001).

[70] *See* Motion to Dismiss, at note 4 (Plaintiff mistakenly stated that the Loan was originated in February 2009, when the Loan was in fact issued in April 2009) (Doc. # 18).

[71] *See* 15 U.S.C § 1640(e) ("[A]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.").

In the Second Circuit, equitable tolling is appropriate "where the defendant is responsible for concealing the existence of plaintiff's cause of action."[72]  In this action, the violation of TILA occurred when Defendants represented to the Plaintiff that the Loan was a student loan, which was a misrepresentation of the legal obligations between the parties.[73]  The further fraudulent conduct has been to conceal from the Plaintiff her cause of action by continuing to refer to the Loan as a student loan beyond the statute of limitations period, including by reporting it to the national credit agencies as a student loan in October 2012,[74] assigning the debt to a third party as a student loan in December 2013,[75] and continuing to contend in statements made to this Court that no misrepresentation was ever made because the debt in question was and is a non-dischargeable student loan.[76]  Defendants' obstinacy in refusing to acknowledge its initial mischaracterization entitles the Plaintiff to equitable tolling.[77]  Plaintiff is, at the very least, entitled to discovery on the issue of fraudulent concealment so that further inquiry can reveal the full extent of the Defendant's misconduct in concealing its misrepresentation from the Plaintiff.[78]

---

[72] *See Weil v. Long Island Savings Bank, FSB*, 77 F.Supp.2d 313, 322 (E.D.N.Y. 1999); *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 587 (E.D.N.Y. 2005) ("Courts have held that equitable tolling is appropriate under TILA if there are allegations of concealment and fraud.")

[73] *See* First Amended Complaint, ¶ 15.

[74] *See id.,* ¶ 18.

[75] *See id.,* ¶ 19.

[76] *See* Motion to Dismiss at 4, 9.

[77] *See Gordon Grp. Investments, LLC v. Kugler*, 115 A.D.3d 433, 435, 982 N.Y.S.2d 18, 20 (2014) (holding that statute of limitations was tolled until the defendant admitted to his fraud) (applying Connecticut law).

[78] *See Capsolas v. Pasta Res., Inc.,* No. 10 CIV. 5595 RJH, 2011 WL 6396511, at *1 (S.D.N.Y. June 23, 2011) ("[I]t appears that the plaintiffs have at least a colorable claim to equitable tolling, and the resolution of this issue would best be left until after discovery has been completed."); *Bill Diodato Photography LLC v. Avon Products, Inc.,* No. 12 CIV. 847 RWS, 2012 WL 3240428, at *6 (S.D.N.Y. Aug. 7, 2012) ("Before deciding the issue of whether the statute of limitations precludes Plaintiff's cause of action, Plaintiff is afforded limited discovery to pursue its theory of equitable tolling.").

2.    **Plaintiff's claim for fraudulent misrepresentation is timely.**

Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted because the statute of limitations has expired on any claim for fraudulent misrepresentation.[79]    In New York, the statute of limitations for fraud is the greater of "six years from the date on which the fraud occurred, or two years from the time the plaintiff discovered, or with reasonable diligence, should have discovered the fraud."[80]    The "reasonable diligence" inquiry turns upon "whether a person of ordinary intelligence possessed knowledge of facts from which the fraud could be reasonably inferred."[81]    Fraud claims are also subject to the discovery rule, a doctrine that delays "accrual of a cause of action until the plaintiff has discovered it."[82] Alternatively, the statute of limitations for a fraud claim is subject to equitable tolling upon a party showing that "subsequent and specific actions were taken by defendants, separate from those that provide the factual basis for the underlying cause of action, and that these subsequent actions by defendants somehow kept plaintiff from timely bringing suit."[83]

The fraud occurred, and thus accrued, when the Loan was originated on April 19, 2009. Alternatively, the fraud claim did not accrue until Plaintiff discovered the fraudulent misrepresentation in March 2015, when her bankruptcy proceeding revealed that the Loan was

---

[79] *See* Motion to Dismiss at n. 4.

[80] *See St. John's Univ., New York v. Bolton,* 757 F. Supp. 2d 144, 186 (E.D.N.Y. 2010); N.Y. C.P.L.R. 213(8) ("[A]n action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.").

[81] *See Childers v. New York & Presbyterian Hosp.,* 36 F. Supp. 3d 292, 314 (S.D.N.Y. 2014).

[82] *See Saint-Jean v. Emigrant Mortgage Co.,* 50 F. Supp. 3d 300, 314 (E.D.N.Y. 2014) (applying the discovery rule to a fraud claim where the defendants' fraudulent scheme was "invisible to individual borrowers.").

[83] *See De Sole v. Knoedler Gallery, LLC,* No. 12 CIV. 2313 PGG, 2015 WL 5773847, at *28 (S.D.N.Y. Sept. 30, 2015).

not, in fact, a student loan and therefore, had been discharged pursuant to the court's Order.[84] Pursuant to New York law, Plaintiff had until the more distant of April 19, 2015, or March 9, 2017 to bring an action for fraud against Defendants.[85] Plaintiff promptly filed this adversary proceeding to enforce her legal rights on March 9, 2015,[86] and in August 2015, amended her complaint to include allegations of fraud.[87] Plaintiff's claim is, therefore, timely. Alternatively, in the event this Court determines Plaintiff's claim is not timely, Plaintiff is entitled to an application of the discovery rule and/or equitable tolling on her claim for fraudulent misrepresentation because Defendants have concealed from Plaintiff her cause of action and continued to misrepresent the Loan as a non-dischargeable student loan to the present day in court papers.[88] At the very least, Plaintiff is entitled to discovery on the question of equitable tolling to determine the facts surrounding Defendants' concealment of Plaintiff's cause of action.[89]

---

[84] *See* Order (Doc. # 10).

[85] *See* N.Y. C.P.L.R. 213(8).

[86] *See* First Amended Complaint, ¶ 23.

[87] *See id.,* ¶¶ 50-57.

[88] *See* Motion to Dismiss at 4, 9; *See also Gordon Grp. Investments, LLC v. Kugler*, 115 A.D.3d 433, 435, 982 N.Y.S.2d 18, 20 (2014) (holding that statute of limitations was tolled until the defendant admitted to his fraud) (applying Connecticut law).

[89] *See St. John's Univ., New York v. Bolton,* 757 F. Supp. 2d 144, 187 (E.D.N.Y. 2010) ("Generally, the issue of whether a defendant should be equitably estopped from asserting the Statute of Limitations as an affirmative defense to the plaintiff's complaint is not a question of law, but rather a question of fact, which should be fully developed and determined upon the trial of the action."); *Childers v. New York & Presbyterian Hosp.,* 36 F. Supp. 3d 292, 314 (S.D.N.Y. 2014) ("When Plaintiffs discovered or could have discovered, through diligence, the alleged fraud will need to be determined on a full factual record.").

# V.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests that the Court deny the Defendants' Motion in its entirety, or alternatively, grant Plaintiff leave to amend the complaint.


Respectfully submitted,

**BREWER STOREFRONT, P.L.L.C**

/s/ Austin C. Smith

William A. Brewer III
Catherine Pastrikos
Austin C. Smith
750 Lexington Ave
New York, New York 10022
Telephone: (212) 489-1400
Email: asmith@brewerattorneys.com
*Attorneys for Plaintiff Lesley Campbell*