1   UNITED STATES BANKRUPTCY COURT

2   EASTERN DISTRICT OF NEW YORK

3   Case No. 14-45990-cec

4   Adv. Case No. 15-01038-cec

5   - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7   LESLEY CAMPBELL,

8                    Debtor.

9   - - - - - - - - - - - - - - - - - - -x

10  LESLEY CAMPBELL,

11                   Plaintiff,

12      -against-

13  CITIBANK, N.A., et al.,

14                   Defendants.

15  - - - - - - - - - - - - - - - - - - -x

16                United States Bankruptcy Court

17                271 Cadman Plaza East

18                Brooklyn, New York

19

20                November 17, 2015

21                11:53 AM

22

23  B E F O R E:

24  HON. CARLA E. CRAIG

25  U.S. BANKRUPTCY JUDGE

1

2  [1] Complaint by Lesley Campbell Against Citibank, N.A., The

3  Student Loan Corporation, Citibank, N.A. The Student Loan

4  Corporation - Nature(s) of Suit: (63 (Dischargeability -

5  523(a)(8), Student Loan), (65 (Dischargeability - Other)

6

7  [18] Motion to Dismiss Adversary Proceeding (Related

8  Document(s) [9])

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Esther Accardi

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S :

3  BREWER ATTORNEYS AND COUNSELORS

4         Attorneys for Plaintiff

5         750 Lexington Avenue

6         14th Floor

7         New York, NY 10022

8

9  BY:   AUSTIN C. SMITH, ESQ.

10

11

12  LOCKE LORD LLP

13         Attorneys for Defendants

14         Three Financial Center

15         New York, NY 10281

16

17  BY:   SAMANTHA INGRAM, ESQ.

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE CLERK:  Number 27, 28 Lesley Campbell v. Citibank.

3    Campbell v. Citibank.

4          Appearances please.

5          MR. SMITH:  Austin Smith from the Brewer Storefront on

6    behalf of plaintiff Lesley Campbell.

7          MS. INGRAM:  Good morning, Your Honor.  Samantha

8    Ingram from Locke Lord on behalf of defendant Citibank and

9    Student Loan Corporation.

10          THE COURT:  Okay.  So I've read your briefs, and I'm

11    interested in the dischargeability question.  And I'll be

12    writing a decision on this.

13          My inclination is to say that to interpret educational

14    benefit to include any student loan would swallow up the rest

15    of the -- would render the rest of the provisions superfluous.

16    So I'm not inclined to go that way.

17          And I also don't see that the amendments in 2005

18    changed the meaning of the provision relating to educational

19    benefit, as it wasn't -- there was no change in the language.

20    That's my view.

21          But my questions I guess -- other questions I have

22    relate to if I decide this is a dischargeable loan, do -- does

23    your fraud -- does the fraud standing have any further

24    relevance?  Fraud claim have any further relevance?

25          MR. SMITH:  We believe it does, Your Honor.  For the

1   reason that our client -- my client has been subjected to a

2   year-long battle here.

3            THE COURT:  So what would be the damages?

4            MR. SMITH:  We believe the fraud damages really come

5   in two kinds.  One is the expense she's had to incur over the

6   last year trying to get rid of this debt that was

7   misclassified.  And the second more under the unjust enrichment

8   prong.

9            THE COURT:  Okay.  So what was the -- what would have

10  been -- in terms of reliance, what's the reliance?  She relied

11  on the representation that it was a nondischargeable loan --

12           MR. SMITH:  Correct.

13           THE COURT:  -- in taking -- okay.  So she said I only

14  want to take out this loan if I can't discharge it?

15           MR. SMITH:  No, Your Honor, that's not what we

16  suggest.

17           THE COURT:  Well, that would be the reliance.

18           MR. SMITH:  No, Your Honor.  We believe the reliance

19  would be that if it had been properly labeled as just a

20  dischargeable consumer loan --

21           THE COURT:  Right.

22           MR. SMITH:  -- whether -- she would have taken the

23  loan either way --

24           THE COURT:  Right.

25           MR. SMITH:  -- but she would have been more appraised

1  of her legal rights.  It would have --

2         THE COURT:  Well, that's -- there's no -- I don't see

3  any damages, any reliance there.  She would have been apprised

4  of her legal rights and -- I think you have to -- in order to

5  show reliance you have to show that the person would not

6  have -- that they took an action in reliance on the

7  representation.

8         MR. SMITH:  And we believe that when she -- she and

9  her lawyer prepared their schedule petition when she went

10  through the bankruptcy proceeding.

11         THE COURT:  Okay.  But they have to have taken -- they

12  have to have relied on the representation in entering into the

13  transaction.

14         MR. SMITH:  Okay.

15         THE COURT:  I think that's what the reliance has to

16  have taken place at the time the transaction was entered into.

17         MR. SMITH:  Okay.

18         THE COURT:  I believe.  I don't think -- and I'm

19  having trouble seeing reliance here.

20         MR. SMITH:  I understand, Your Honor.  In that event,

21  we still do believe that, given this is a motion to dismiss, we

22  would like to do some discovery on that issue, because we do

23  believe that there will be some discovery that could reveal the

24  extent to which the fraudulent misrepresentation --

25         THE COURT:  Well, you have -- the fraudulent

1    misrepresentation that it was a nondischargeable loan, how

2    would that conceivably damage you?  That -- it doesn't make any

3    sense to me.  You'd have to be telling me that she was

4    specifically looking for a nondischargeable loan, and that

5    she -- it would make more sense the other way around, if they

6    had -- if you were telling me that they had represented to her

7    that it was dischargeable and then took the position after the

8    fact that it was nondischargeable, then that makes some sense

9    to me maybe.

10              MR. SMITH:  Okay.

11              THE COURT:  But that's not -- you're saying the

12   opposite of that.

13              MR. SMITH:  I am saying the opposite.  I do believe

14   that there are, as we've said in our papers, had this been

15   reflected in her credit reports, she's been carrying around

16   this misclassified debt, it has caused her injury.  And --

17              THE COURT:  Well, that -- I don't see how that's

18   fraud.

19              MR. SMITH:  Okay.

20              THE COURT:  And as far as truth in lending is

21   concerned, it seems like you have a statute of limitations

22   problem.

23              MR. SMITH:  And we believe that we're entitled to

24   equitable tolling on that, Your Honor.

25              THE COURT:  Based upon?

1      MR. SMITH:  Based upon the fact that the defendants
2  have concealed the existence of this --
3      THE COURT:  How have they concealed it?
4      MR. SMITH:  They concealed it by continuing to
5  represent it as a student loan, when, in fact, they
6  do -- they --
7      THE COURT:  Well, they take the position it is a
8  student loan.
9      MR. SMITH:  And we do believe that discovery will
10 reveal that they've taken inconsistent positions for that with
11 respect to the disclosures they've made to investors.  We do
12 believe that they actually are entirely aware that this is a
13 non -- is a dischargeable consumer loan.
14     We don't believe the defendant should be entitled to
15 just -- in making these classifications, there have to be some
16 consequences to it, beyond just having the debt discharged.
17 That we do believe this was, on its face, a violation of the
18 Truth in Lending Act.  And to come into Court and --
19     THE COURT:  So what's the -- what's the concealment?
20     MR. SMITH:  The concealment is that by continuing to
21 represent it as a student loan, the plaintiff was denied her
22 right to understand the legal obligations, which was that this
23 wasn't a dischargeable debt.
24     THE COURT:  But this -- it seems to me that you are
25 conflating two things.  You're saying that the -- that the

1  false representation --

2           MR. SMITH:  Yes, ma'am.

3           THE COURT:  -- was that it was a nondischargeable

4  loan.

5           MR. SMITH:  Correct.

6           THE COURT:  And you said they're concealing

7  it -- they're concealing that representation -- they concealed

8  their misrepresentation by representing that it was a

9  nondischargeable loan.  So that -- I think you're -- that

10  does -- I don't think that that falls into the category of

11  fraudulent concealment.

12           MR. SMITH:  Your Honor, with respect, I would state

13  that --

14           THE COURT:  She --

15           MR. SMITH:  -- one of the prongs on the test for

16  equitable tolling is that the defendant is responsible for

17  concealing the cause of action from plaintiff.  And we just

18  believe in this case, the plaintiff should not have been

19  obligated to consult the tax code and the Higher Education Act,

20  and case law to determine what sort of debt she had.  They've

21  been continuously representing it as a student loan, which by

22  definition means it's presumptively nondischargeable in

23  bankruptcy.

24           They have saddled her with a debt and forced her into

25  an adversary proceeding, that if it had just been labeled

1    properly, none of this would have happened.  The debt would

2    have been discharged as we believe it was discharged by your

3    order of March.

4           THE COURT:  Okay.

5           MR. SMITH:  And I understand the concern, Your Honor,

6    that the fraudulent concealment is simply an ongoing

7    misrepresentation.  And that, in your opinion, may not be

8    substantively different from the original misclassification.

9           THE COURT:  Right.

10          MR. SMITH:  But we submit, Your Honor, that there was

11   a truth in lending violation, given that the defendants have

12   drawn up very lengthy papers arguing that they made no such

13   misclassification.  This is clearly a question that's confused

14   a lot of people.  And we believe, Your Honor, that, if nothing

15   else, we are entitled to a little bit of discovery to show how

16   the defendants have not entirely been truthful about their

17   knowledge.

18          THE COURT:  So your stand -- your contention is that

19   they -- that they have represented to investors?  What, is this

20   in publicly filed documents at some point?

21          MR. SMITH:  Yes, Your Honor, SEC disclosures.

22          THE COURT:  Well, then why do you need -- why do you

23   need discovery, you can pull those off online?

24          MR. SMITH:  We can pull this online, we would just

25   like some discovery to see -- I mean, that's one example, we

1  believe that there will be more.

2          THE COURT:  So you're saying that there is a form 8-K

3  or something -- a 10-K that shows this?

4          MR. SMITH:  When these loans are created, a lot of

5  times they're securitized into asset-backed securities.

6          THE COURT:  I see.

7          MR. SMITH:  And in the disclosures that Citibank made

8  as an underwriter and a book runner for a number of these

9  trusts, there are disclosures that say student loans that are

10 not made for qualified educational expenses are not protected

11 from discharge in bankruptcy.

12         THE COURT:  Okay.  But they would take the position

13 that this was a student loan made for a qualified educational

14 expense?

15         MR. SMITH:  No, Your Honor, they do not take that

16 position actually.

17         THE COURT:  Is that right?

18         MS. INGRAM:  We take the position that the student

19 loan was an educational benefit under Section 523(a)(8)(A)(ii)

20 of the Bankruptcy Code.

21         THE COURT:  So you're saying the disclosure says that

22 any loan that is not a qualified education loan is not

23 dischargeable?

24         MR. SMITH:  What the disclosure actually says -- and

25 the trusts sort of state it a different ways sometimes.  But

1    what it says is bankruptcy disclosure, loans made for qualified

2    educational expenses are protected from discharge in

3    bankruptcy.   However, this trust includes many loans that were

4    made -- that were not made for qualified educational expenses

5    and, therefore, are not protected from discharge in bankruptcy.

6            THE COURT:  Okay.

7            MR. SMITH:  To the extent you own any of those notes,

8    you bear the loss --

9            THE COURT:  Okay.

10           MR. SMITH:  -- in value.

11           THE COURT:  Well, how do we know that that disclosure

12    was meant to refer to this loan?

13           MR. SMITH:  We believe, Your Honor -- well, it wasn't

14    meant to -- actually refer to plaintiff's loan specifically, it

15    was meant to refer to anything --

16           THE COURT:  Or this type of loan?

17           MR. SMITH:  This type of loan.  Well, in the sense

18    that this was a student loan that was not made for qualified

19    educational expenses.  And there are a number of these.  The

20    bar exam loans, loans for medical students in residency, career

21    training loans, loans made to schools that are not accredited

22    by the Department of Education.  So there's a -- there's a

23    plethora of these types of loan, and the commonality of all of

24    them is that none of them were made for qualified educational

25    expenses.

1          THE COURT:  Well, then none of them -- the terminology
2    in the statute is qualified education loan.
3          MR. SMITH:  Correct.  And a qualified education loan
4    is defined by IRC 22.1(d) as a loan incurred solely to pay for
5    qualified educational expenses.
6          THE COURT:  Okay, all right.
7          So your view is that that is a truth in lending
8    violation?
9          MR. SMITH:  Yes, Your Honor.  We believe that that is
10   a misrepresentation of the legal obligations between the
11   parties.
12         THE COURT:  And what about your unjust enrichment
13   claim?
14         MR. SMITH:  Our unjust enrichment claim --
15         THE COURT:  How does that work?
16         MR. SMITH:  -- like the fraud claim -- is based on
17   what we allege is Citibank's practice of selling unsecured
18   consumer loans as nondischargeable student loans in order to
19   increase their value on the secondary market.  Obviously a debt
20   that is nondischargeable in bankruptcy we believe is worth a
21   lot more than an unsecured consumer debt that can be discharged
22   in bankruptcy.
23         THE COURT:  Well, that might be fraud on the person
24   who bought the loan, but I don't know how it's fraud on --
25         MR. SMITH:  No, we agree that it also could be fraud

1  with the person who bought the loan.  However, we do believe

2  that that cate- -- the purpose -- that one of the purposes

3  Citibank had in representing this as a nondischargeable loan

4  was to increase its value in the secondary market.  We believe

5  our client was injured by that.  It's true that Cash LLC may

6  also have been injured.

7          THE COURT:  But she has -- there has to be

8  representation that she relied on to her detriment somehow.

9          MR. SMITH:  I understand, Your Honor.  And we believe

10  that until --

11          THE COURT:  I don't --

12          MR. SMITH:  -- her day in court today she has been

13  relying on that.

14          THE COURT:  I know, but what's -- reliance is when you

15  say okay, because you -- because you're telling me this --

16          MR. SMITH:  Yes.

17          THE COURT:  -- I will go ahead -- I'll do this deal

18  with you.

19          MR. SMITH:  Okay.  I understand, Your Honor.  Under

20  that understanding of reliance we would not be able to show

21  that, no.

22          THE COURT:  All right.  Do you have anything you want

23  to put on the record?

24          MS. INGRAM:  Yes, Your Honor.  To the extent -- would

25  you welcome me to speak a little bit about the dischargeability

 1  issue?

 2          THE COURT:  Go ahead.

 3          MS. INGRAM:  Okay.  Thank you, Your Honor.

 4          Your Honor had expressed a concern about if we hold

 5  that the bar study loan to be nondischargeable, that will apply

 6  to a wide swath of loans.

 7          THE COURT:  Correct.

 8          MS. INGRAM:  And we're here today, Your Honor, on

 9  behalf of defendant Citibank and Student Loan Corporation, not

10  all defendants, just those two defendants who have moved here

11  today, to say that only bar study loans specifically should --

12          THE COURT:  Are there other -- are there other

13  defendants here that haven't moved to dis --

14          MS. INGRAM:  Yes, there are three other defendants,

15  Your Honor.

16          THE COURT:  What is their connection with this?

17          MS. INGRAM:  They've answered.  So Citibank and

18  Student Loan Corporation sold the loan to SquareTwo Financial

19  in 2013, about a year before the plaintiff even filed for

20  bankruptcy.  So those three other defendants have answered the

21  complaint and not joined our motion to dismiss.  And there are

22  additional claims that have just been brought against them, and

23  not my clients.

24          THE COURT:  So if I grant -- if I deny this motion to

25  dismiss on the basis that as a matter of law this is a

1  non -- this is a dischargeable loan, is that law of the case,

2  what happens here -- what happens next?  What happens then?

3          MR. SMITH:  I believe, Your Honor, yes --

4          THE COURT:  You didn't make a motion -- did you make

5  motion for summary judgment?

6          MR. SMITH:  We have not made a motion for summary

7  judgment, Your Honor.

8          THE COURT:  Okay.  All right.  Sorry, go ahead.

9          MS. INGRAM:  Thank you, Your Honor.

10          So, again, we're just asking the Court to hold that

11  student bar loans, such as the loan at issue here --

12          THE COURT:  Why would I take out -- how do you get

13  that out of the language of the statute?  I understand that you

14  don't-- you don't want me to read this broadly --

15          MS. INGRAM:  Right.

16          THE COURT:  -- but why would your -- why would a

17  student bar loan -- where does it say student bar loans here,

18  or --

19          MS. INGRAM:  Right.

20          THE COURT:  -- anything that could be reasonably

21  interpreted to point in that direction?

22          MS. INGRAM:  Yes, Your Honor.  So we believe that a

23  student bar loans falls under the educational benefit category

24  of Section 523.

25          THE COURT:  Based on what?

1    MS. INGRAM:  Based on the case law that's on point.

2    There are two cases directly on point.

3    THE COURT:  Yeah.  I don't -- I respectfully disagree

4    with both of those cases.

5    MS. INGRAM:  Okay, Your Honor.  Also, the 2005

6    amendments, I know you had mentioned those before.  But we

7    believe that separating out that section that is now subsection

8    (A)(ii) made it a separate category of loans.  And that if you

9    apply it to the other remaining categories, the qualified

10   education loans, and those being insured by governmental units,

11   there are "ors" in the language of the statute.  And if you

12   read educational benefit to also be required to be a

13   government --

14   THE COURT:  But I don't know why you would read it

15   that way in the pre-BAPCPA.  I think the "or" indicates that

16   qualified educational loan was not -- was something separate

17   from a federally insured loan, or federally guaranteed loan.

18   The fact that it was contained in the same subsection doesn't

19   mean that it was modified by that same -- by the language

20   guaranteed.

21   MS. INGRAM:  Right.  We're just saying that separating

22   out to be its own subsection meant it didn't also have to meet

23   the categories that are still in the other two subsections.

24   THE COURT:  Right.  And I'm saying it wasn't before.

25   MS. INGRAM:  It was altogether in one trump report.

1       THE COURT:  But I declined to conclude that the fact

2   that the word -- that the words "obligation to repay funds

3   received as an educational benefit scholarship or stipend" the

4   fact that it was previously part of subsection (A)(i) with the

5   exact same language, that means that it was -- that this was

6   intended to refer at that time to a guaranteed loan or benefit.

7       MS. INGRAM:  Um-hmm.

8       THE COURT:  I think -- I don't think that you can

9   reasonably read the language to provide that.

10       MS. INGRAM:  Okay.

11       THE COURT:  Also, the other thing I would say is that

12   the fact that they added "a qualified educational loan" as a

13   separate category of nondischargeable loan, I think undercuts

14   your argument, because clearly they intended -- Congress

15   intended to provide for the nondischargeability of a limited

16   category of nongovernmental guaranteed loans, namely qualified

17   educational loans.  So if you were to interpret educational

18   benefit to include any kind of -- or other kinds of private

19   loans, nongovernmental loans that are not guaranteed and are

20   not qualified, then I think your -- I think that becomes

21   superfluous.  And I don't know how -- you're saying well, it's

22   not all private loans, it's just bar loans.  I don't know where

23   you get that from the language of the statute.  If I read it to

24   include bar loans, because they're -- and conclude that that's

25   an educational benefit, I don't know why I wouldn't conclude

1    that any other loan made for -- to a student is a educational

2    benefit.

3              I also don't think the word "educational benefit"

4    would be normally understood to include a loan.  A loan, unless

5    it's -- I suppose if it were at a zero interest rate loan, or

6    something like that, might be considered a benefit.  But a loan

7    is a commercial transaction, it's not a benefit.  A benefit is

8    typically understood to be a grant or a -- something that is

9    given to you that is advantageous from -- and not on normal

10   commercial terms.  And I wouldn't consider this to be -- unless

11   you're telling me that this was a super low interest rate loan,

12   or something like that?

13             MS. INGRAM:  No, Your Honor, we were just basing our

14   argument on the case law that's interpreted Section --

15             THE COURT:  Yes, I saw that.

16             MS. INGRAM:  -- (A)(ii) to be broader than it was

17   initially before the 2005 amendments, and the other cases --

18             THE COURT:  Right.

19             MS. INGRAM:  -- that have held these types of loans to

20   be nondischargeable.

21             THE COURT:  I disagree with those cases.

22             MS. INGRAM:  Understood.

23             THE COURT:  Do you want to talk about the other -- the

24   other issues?

25             MS. INGRAM:  Yes, please, Your Honor.

1           As you have noted, regardless of the decision of

2    whether the student bar loan is held to be dischargeable or

3    not, there are other reasons to dismiss the additional causes

4    of action that have been brought against our clients.

5           First, with respect to the Truth in Lending Act claim,

6    we would agree that there's no equitable tolling that applies,

7    since our clients haven't made a misrepresentation of

8    concealment.

9           THE COURT:  You would agree with who?

10          MS. INGRAM:  With what Your Honor was getting at

11   before.

12          THE COURT:  I haven't concluded that.

13          MS. INGRAM:  No, respectfully, you have not concluded

14   it.  It was just based on your questioning, Your Honor.

15          We would argue that the Truth in Lending Act claim is

16   barred by the one-year statute of limitations, and that there's

17   no need for any additional discovery.  Plaintiff's counsel had

18   mentioned some public disclosures.  Again, those are public,

19   and anything else would be a fishing expedition.  We've put all

20   the relevant documents before the Court and plaintiff's

21   counsel.  We've attached the note itself, and there's no

22   misrepresentations in the language of the note.

23          There's also the --

24          THE COURT:  Well, they argued that the statement that

25   it's nondischargeable is a misrepresentation.

1      MS. INGRAM:  Well, I think they were arguing perhaps

2 that we knew we were misrepresenting the loan as

3 nondischargeable.  And we maintain the position that the loan

4 in our opinions was nondischargeable.  So that wasn't an

5 intentional misrepresentation.

6      Also, with respect to the unjust enrichment claim.  I

7 would like to add that it's our position that the plaintiffs

8 don't have standing to bring that claim, both under Article 3

9 and prudential standing -- standards.  There's --

10      THE COURT:  Why is that?

11      MS. INGRAM:  Well, for Article 3, first, Your Honor,

12 there's been no clear statement of any injury, or how that

13 injury could be redressed if --

14      THE COURT:  Well, she's incurred attorney's fees in

15 fighting this battle with you.  That, I suppose, would

16 be -- that's the injury that I'm assuming that they're looking

17 at.

18      MS. INGRAM:  It's not stated, I believe, in the

19 complaint, Your Honor.

20      THE COURT:  Is that the injury you're talking about?

21      MR. SMITH:  Yes, Your Honor.  And we -- those fees are

22 ongoing, so to the extent that we stated in the complaint that

23 in an amount to be determined at trial.

24      THE COURT:  Um-hum.

25      MS. INGRAM:  Well then, still, Your Honor, there's no

1  pleading that disgorging the proceeds of those sale to my

2  clients would redress the plaintiff's injury.  If -- and that

3  kinds of gets into prudential standing.

4          THE COURT:  Well, just paying the attorney's fees

5  would redress her damages.

6          MS. INGRAM:  Paying the attorney's fee for the

7  unjust --

8          THE COURT:  Right.

9          MS. INGRAM:  -- enrichment claim.

10          THE COURT:  Right, which she's incurred in

11 defending -- in prosecuting, or in obtaining a court

12 determination that this loan is nondischargeable.

13          MS. INGRAM:  The way --

14          THE COURT:  Is dischargeable, I should say.

15          MS. INGRAM:  -- I believe the claim was pled was that

16 the sale of the loan from my clients to the other defendants

17 was what unjustly enriched my clients.  And that is

18 plaintiff's -- basis of plaintiff's claim.

19          THE COURT:  Okay.

20          MS. INGRAM:  And it's not clear how she was injured by

21 that, or how --

22          THE COURT:  Yeah.

23          MS. INGRAM:  -- disgorging the proceeds of that sale

24 would redress that injury.

25          THE COURT:  Yeah, I guess that's right.  That's

1   not -- that wouldn't be necessarily --

2           MS. INGRAM:  That would conceivably only affect

3   SquareTwo who bought the loan.

4           THE COURT:  And I don't know that how -- I don't think

5   that causing someone to incur attorney's fees enriches

6   Citibank.

7           MR. SMITH:  No, Your Honor, we would think that that

8   does not enrich Citibank.

9           THE COURT:  Okay, all right.

10          Anything else?

11          MS. INGRAM:  And just quickly, Your Honor, lastly on

12  the fraudulent misrepresentation claim.  In addition to the

13  dischargeability issue, we just note that there has been

14  insufficient pleading with respect to the nature of the

15  fraudulent misrepresentation: who made the representation, when

16  it was made, and the nature of that misrepresentation.

17          THE COURT:  Well, isn't there statement -- the

18  statement of it as a nondischargeable loan is in the loan

19  documents, isn't it?

20          MS. INGRAM:  That was raised in their opposition, not

21  in the complaint itself, Your Honor.  And even still, I don't

22  believe that the note itself --

23          THE COURT:  Well, isn't the loan -- is the note

24  attached to the --

25          MS. INGRAM:  The note's attached to our motion.

1          THE COURT:  'Cause --

2          MR. SMITH:  Yes, Your Honor.  In our amended

3    complaint -- the plaintiff's first amended complaint, we allege

4    in paragraph 15, that the defendants Student Loan Corporation

5    and Citibank misrepresented this debt as a student loan to the

6    plaintiff.

7          And what's important about that, Your Honor, is

8    because the Supreme Court has said that student loans are, by

9    definition, presumptively nondischargeable, simply by calling

10   it a student loan they set in chain this motion of events

11   that --

12         THE COURT:  Yeah.

13         MR. SMITH:  -- has led to her debt.

14         THE COURT:  But she's saying where did we say it was a

15   student loan.

16         MR. SMITH:  The document's titled the Master Student

17   Loan Promissory Note.

18         THE COURT:  Is that document anywhere in the record?

19   That's I think the point that she's making.

20         MR. SMITH:  Yes.  They attached it to their response.

21   We, certainly, incorporate it by reference in our complaint.

22         THE COURT:  Okay.  To the extent that you're arguing

23   that because it wasn't attached to the complaint, I can't

24   consider it, I suppose that's something that could be easily

25   enough rectified by amendment, if that were --

1          MS. INGRAM:  No, Your Honor, because we've --

2          THE COURT:  -- sufficient.

3          MS. INGRAM:  -- attached the note to our motion.  And

4   I do -- I see it's called Master Student Loan Promissory Note,

5   but we would disagree with the assumption that just because

6   it's called a student loan it's automatically considered --

7          THE COURT:  Does the note say -- does the note say

8   anything about it, to be effective it's nondischargeable?

9          MS. INGRAM:  I don't believe it does, Your Honor.

10         MR. SMITH:  We would concede it does not, Your Honor.

11  But, nonetheless, it doesn't need to.

12         THE COURT:  Okay.  Do you have anything else?

13         MS. INGRAM:  No.  I believe those are all the claims,

14  Your Honor.

15         THE COURT:  So where do you say that the

16  misrepresentation was made that it's a nondischargeable loan?

17         MR. SMITH:  Your Honor --

18         THE COURT:  If it's not in -- you're saying just by

19  calling it a student loan, that was a misrepresentation that it

20  was a nondischargeable loan?

21         MR. SMITH:  Correct, Your Honor, because according to

22  Supreme Court precedent, all student loans are presumptively

23  nondischargeable.  So if you call it a student loan you invest

24  it with this legal protection that it survives a bankruptcy

25  proceeding, and the creditor's due process rights require an

1  adversary proceeding.  And if you look at a statistic, 99.9

2  percent of students never seek that adversary proceeding

3  because it's very expensive.  So just by calling it a student

4  loan, 99.9 percent of these loans survive bankruptcy whether or

5  not they were student loans at all, and can be continued to be

6  collected upon --

7           THE COURT:  Okay.

8           MR. SMITH:  -- till the death of the debtor.

9           THE COURT:  Okay, thank you.

10           MR. SMITH:  Thank you.

11           THE COURT:  Anything else?

12           All right.  Thanks a lot.

13           MS. INGRAM:  Thank you, Your Honor.

14       (Whereupon these proceedings were concluded at 12:19 PM)

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Esther Accardi, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   ESTHER ACCARDI

11   AAERT Certified Electronic Transcriber CET**D 485

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  November 18, 2015

18

19

20

21

22

23

24

25

**A**

**able (1)**
14:20
**according (1)**
25:21
**accredited (1)**
12:21
**Act (4)**
8:18;9:19;20:5,15
**action (3)**
6:6;9:17;20:4
**actually (4)**
8:12;11:16,24;
12:14
**add (1)**
21:7
**added (1)**
18:12
**addition (1)**
23:12
**additional (3)**
15:22;20:3,17
**advantageous (1)**
19:9
**adversary (3)**
9:25;26:1,2
**affect (1)**
23:2
**again (2)**
16:10;20:18
**against (2)**
15:22;20:4
**agree (3)**
13:25;20:6,9
**ahead (3)**
14:17;15:2;16:8
**Ai (1)**
18:4
**Aii (2)**
17:8;19:16
**allege (2)**
13:17;24:3
**altogether (1)**
17:25
**amended (2)**
24:2,3
**amendment (1)**
24:25
**amendments (3)**
4:17;17:6;19:17
**amount (1)**
21:23
**answered (2)**
15:17,20
**Appearances (1)**
4:4
**applies (1)**
20:6
**apply (2)**
15:5;17:9
**appraised (1)**

**5:25**
**apprised (1)**
6:3
**argue (1)**
20:15
**argued (1)**
20:24
**arguing (3)**
10:12;21:1;24:22
**argument (2)**
18:14;19:14
**around (2)**
7:5,15
**Article (2)**
21:8,11
**asset-backed (1)**
11:5
**assuming (1)**
21:16
**assumption (1)**
25:5
**attached (6)**
20:21;23:24,25;
24:20,23;25:3
**attorney's (4)**
21:14;22:4,6;23:5
**Austin (1)**
4:5
**automatically (1)**
25:6
**aware (1)**
8:12

**B**

**bankruptcy (12)**
6:10;9:23;11:11,
20;12:1,3,5;13:20,
22;15:20;25:24;26:4
**bar (10)**
12:20;15:5,11;
16:11,17,17,23;
18:22,24;20:2
**barred (1)**
20:16
**Based (6)**
7:25;8:1;13:16;
16:25;17:1;20:14
**basing (1)**
19:13
**basis (2)**
15:25;22:18
**battle (2)**
5:2;21:15
**bear (1)**
12:8
**becomes (1)**
18:20
**behalf (3)**
4:6,8;15:9
**benefit (14)**
4:14,19;11:19;
16:23;17:12;18:3,6,

**18,25;19:2,3,6,7,7**
**beyond (1)**
8:16
**bit (2)**
10:15;14:25
**book (1)**
11:8
**both (2)**
17:4;21:8
**bought (3)**
13:24;14:1;23:3
**Brewer (1)**
4:5
**briefs (1)**
4:10
**bring (1)**
21:8
**broader (1)**
19:16
**broadly (1)**
16:14
**brought (2)**
15:22;20:4

**C**

**call (1)**
25:23
**called (2)**
25:4,6
**calling (3)**
24:9;25:19;26:3
**Campbell (3)**
4:2,3,6
**can (5)**
10:23,24;13:21;
18:8;26:5
**career (1)**
12:20
**carrying (1)**
7:15
**case (5)**
9:18,20;16:1;17:1;
19:14
**cases (4)**
17:2,4;19:17,21
**Cash (1)**
14:5
**cate- (1)**
14:2
**categories (2)**
17:9,23
**category (5)**
9:10;16:23;17:8;
18:13,16
**cause (2)**
9:17;24:1
**caused (1)**
7:16
**causes (1)**
20:3
**causing (1)**
23:5

**certainly (1)**
24:21
**chain (1)**
24:10
**change (1)**
4:19
**changed (1)**
4:18
**Citibank (10)**
4:2,3,8;11:7;14:3;
15:9,17;23:6,8;24:5
**Citibank's (1)**
13:17
**claim (12)**
4:24;13:13,14,16;
20:5,15;21:6,8;22:9,
15,18;23:12
**claims (2)**
15:22;25:13
**classifications (1)**
8:15
**clear (2)**
21:12;22:20
**clearly (1)**
10:13;18:14
**CLERK (1)**
4:2
**client (3)**
5:1,1;14:5
**clients (6)**
15:23;20:4,7;22:2,
16,17
**code (2)**
9:19;11:20
**collected (1)**
26:6
**commercial (2)**
19:7,10
**commonality (1)**
12:23
**complaint (8)**
15:21;21:19,22;
23:21;24:3,3,21,23
**concealed (1)**
8:2,3,4;9:7
**concealing (3)**
9:6,7,17
**concealment (5)**
8:19,20;9:11;10:6;
20:8
**concede (1)**
25:10
**conceivably (2)**
7:2;23:2
**concern (2)**
10:5;15:4
**concerned (1)**
7:21
**conclude (3)**
18:1,24,25
**concluded (2)**
20:12,13;26:14
**conflating (1)**

**8:25**
**confused (1)**
10:13
**Congress (1)**
18:14
**connection (1)**
15:16
**consequences (1)**
8:16
**consider (2)**
19:10;24:24
**considered (1)**
19:6;25:6
**consult (1)**
9:19
**consumer (4)**
5:20;8:13;13:18,
21
**contained (1)**
17:18
**contention (1)**
10:18
**continued (1)**
26:5
**continuing (2)**
8:4,20
**continuously (1)**
9:21
**Corporation (4)**
4:9;15:9,18;24:4
**counsel (2)**
20:17,21
**COURT (105)**
4:10;5:3,9,13,17,
21,24;6:2,11,15,18,
25;7:11,17,20,25;
8:3,7,18,19,24;9:3,6,
14;10:4,9,18,22;
11:2,6,12,17,21;
12:6,9,11,16;13:1,6,
12,15,23,14;14:7,11,12,
14,17,22;15:2,7,12,
16,24;16:4,8,10,12,
16,20,25;17:3,14,24;
18:1,8,11,19;15,18,
21,23;20:9,12,20,24;
21:10,14,20,24;22:4,
8,10,11,14,19,22,25;
23:4,9,17,23;24:1,8,
12,14,18,22;25:2,7,
12,15,18,22;26:7,9,
11
**created (1)**
11:4
**credit (1)**
7:15
**creditor's (1)**
25:25

**D**

**damage (1)**
7:2

**damages (4)**
5:3,4;6:3;22:5
**day (1)**
14:12
**deal (1)**
14:17
**death (1)**
26:8
**debt (11)**
5:6;7:16;8:16,23;
9:20,24;10:1;13:19,
21;24:5,13
**debtor (1)**
26:8
**decide (1)**
4:22
**decision (2)**
4:12;20:1
**declined (1)**
18:1
**defendant (4)**
4:8;8:14;9:16;15:9
**defendants (10)**
8:1;10:11,16;
15:10,10,13,14,20;
22:16;24:4
**defending (1)**
22:11
**defined (1)**
13:4
**definition (2)**
9:22;24:9
**denied (1)**
8:21
**deny (1)**
15:24
**Department (1)**
12:22
**determination (1)**
22:12
**determine (1)**
9:20
**determined (1)**
21:23
**detriment (1)**
14:8
**different (2)**
10:8;11:25
**direction (1)**
16:21
**directly (1)**
17:2
**dis (1)**
15:13
**disagree (3)**
17:3;19:21;25:5
**discharge (4)**
5:14;11:11;12:2,5
**dischargeability (3)**
4:11;14:25;23:13
**dischargeable (9)**
4:22;5:20;7:7;
8:13,23;11:23;16:1;

20:2;22:14
**discharged (4)**
8:16;10:2,2;13:21
**disclosure (4)**
11:21,24;12:1,11
**disclosures (5)**
8:11;10:21;11:7,9;
20:18
**discovery (7)**
6:22,23;8:9;10:15,
23,25;20:17
**disgorging (2)**
22:1,23
**dismiss (4)**
6:21;15:21,25;
20:3
**document (1)**
24:18
**documents (3)**
10:20;20:20;23:19
**document's (1)**
24:16
**don't- (1)**
16:14
**drawn (1)**
10:12
**due (1)**
25:25

**E**

**easily (1)**
24:24
**Education (6)**
9:19;11:22;12:22;
13:2,3;17:10
**educational (20)**
4:13,18;11:10,13,
19;12:2,4,19,24;
13:5;16:23;17:12,
16;18:3,12,17,17,25;
19:1,3
**effective (1)**
25:8
**either (1)**
5:23
**else (5)**
10:15;20:19;
23:10;25:12;26:11
**enough (1)**
24:25
**enrich (1)**
23:8
**enriched (1)**
22:17
**enriches (1)**
23:5
**enrichment (5)**
5:7;13:12,14;21:6;
22:9
**entered (1)**
6:16
**entering (1)**

6:12
**entirely (2)**
8:12;10:16
**entitled (3)**
7:23;8:14;10:15
**equitable (3)**
7:24;9:16;20:6
**even (2)**
15:19;23:21
**event (1)**
6:20
**events (1)**
24:10
**exact (1)**
18:5
**exam (1)**
12:20
**example (1)**
10:25
**existence (1)**
8:2
**expedition (1)**
20:19
**expense (2)**
5:5;11:14
**expenses (6)**
11:10;12:2,4,19,
25;13:5
**expensive (1)**
26:3
**expressed (1)**
15:4
**extent (5)**
6:24;12:7;14:24;
21:22;24:22

**F**

**face (1)**
8:17
**fact (7)**
7:8;8:1,5;17:18;
18:1,4,12
**falls (2)**
9:10;16:23
**false (1)**
9:1
**far (1)**
7:20
**federally (2)**
17:17,17
**fee (1)**
22:6
**fees (4)**
21:14,21;22:4;
23:5
**fighting (1)**
21:15
**filed (2)**
10:20;15:19
**Financial (1)**
15:18
**First (3)**

20:5;21:11;24:3
**fishing (1)**
20:19
**forced (1)**
9:24
**form (1)**
11:2
**fraud (9)**
4:23,23,24;5:4;
7:18;13:16,23,24,25
**fraudulent (6)**
6:24,25;9:11;10:6;
23:12,15
**funds (1)**
18:2
**further (2)**
4:23,24

**G**

**gets (1)**
22:3
**given (3)**
6:21;10:11;19:9
**Good (1)**
4:7
**government (1)**
17:13
**governmental (1)**
17:10
**grant (2)**
15:24;19:8
**guaranteed (5)**
17:17,20;18:6,16,
19
**guess (2)**
4:21;22:25

**H**

**happened (1)**
10:1
**happens (3)**
16:2,2,2
**held (2)**
19:19;20:2
**Higher (1)**
9:19
**hold (2)**
15:4;16:10
**Honor (46)**
4:7,25;5:15,18;
6:20;7:24;9:12;10:5,
10,14,21;11:15;
12:13;13:9;14:9,19,
24;15:3,4,8,15;16:3,
7,9,22;17:5;19:13,
25;20:10,14;21:11,
19,21,25;23:7,11,21;
24:2,7;25:1,9,10,14,
17,21;26:13

**I**

**important (1)**
24:7
**inclination (1)**
4:13
**inclined (1)**
4:16
**include (4)**
4:14;18:18,24;
19:4
**includes (1)**
12:3
**inconsistent (1)**
8:10
**incorporate (1)**
24:21
**increase (2)**
13:19;14:4
**incur (2)**
5:5;23:5
**incurred (3)**
13:4;21:14;22:10
**indicates (1)**
17:15
**INGRAM (44)**
4:7,8;11:18;14:24;
15:3,8,14,17;16:9,
15,19,22;17:1,5,21,
25;18:7,10;19:13,16,
19,22,25;20:10,13;
21:1,11,18,25;22:6,
9,13,15,20,23;23:2,
11,20,25;25:1,3,9,
13;26:13
**initially (1)**
19:17
**injured (1)**
14:5,6;22:20
**injury (7)**
7:16;21:12,13,16,
20;22:2,24
**insufficient (1)**
23:14
**insured (2)**
17:10,17
**intended (3)**
18:6,14,15
**intentional (1)**
21:5
**interest (2)**
19:5,11
**interested (1)**
4:11
**interpret (2)**
4:13;18:17
**interpreted (2)**
16:21;19:14
**into (7)**
6:12,16;8:18;9:10,
24;11:5;22:3
**invest (1)**

25:23
**investors (2)**
8:11;10:19
**IRC (1)**
13:4
**issue (4)**
6:22;15:1;16:11;
23:13
**issues (1)**
19:24

**J**

**joined (1)**
15:21
**judgment (2)**
16:5,7

**K**

**kind (1)**
18:18
**kinds (3)**
5:5;18:18;22:3
**knew (1)**
21:2
**knowledge (1)**
10:17

**L**

**labeled (2)**
5:19;9:25
**language (8)**
4:19;16:13;17:11,
19;18:5,9,23;20:22
**last (1)**
5:6
**lastly (1)**
23:11
**law (5)**
9:20;15:25;16:1;
17:1;19:14
**lawyer (1)**
6:9
**led (1)**
24:13
**legal (5)**
6:1,4;8:22;13:10;
25:24
**lending (6)**
7:20;8:18;10:11;
13:7;20:5,15
**lengthy (1)**
10:12
**Lesley (2)**
4:2,6
**limitations (2)**
7:21;20:16
**limited (1)**
18:15
**little (2)**
10:15;14:25

**LLC (1)**
14:5
**Loan (72)**
4:9,14,22;5:11,14,
20,23;7:1,4;8:5,8,13,
21;9:4,9,21;11:13,
19,22,22;12:12,14,
16,17,18,23;13:2,3,4,
24;14:1,3;15:5,9,18,
18;16:1,11,17;17:16,
17,17;18:6,12,13;
19:1,4,4,5,6,11;20:2;
21:2,3;22:12,16;
23:3,18,18,23;24:4,
5,10,15,17;25:4,6,16,
19,20,23;26:4
**loans (29)**
11:4,9;12:1,3,20,
20,21,21;13:18,18;
15:6,11;16:11,17,23;
17:8,10;18:16,17,19,
19,22,22,24;19:19;
24:8;25:22;26:4,5
**Locke (1)**
4:8
**look (1)**
26:1
**looking (2)**
7:4;21:16
**Lord (1)**
4:8
**loss (1)**
12:8
**lot (4)**
10:14;11:4;13:21;
26:12
**low (1)**
19:11

**M**

**ma'am (1)**
9:2
**maintain (1)**
21:3
**makes (1)**
7:8
**making (2)**
8:15;24:19
**many (1)**
12:3
**March (1)**
10:3
**market (2)**
13:19;14:4
**Master (2)**
24:16;25:4
**matter (1)**
15:25
**may (2)**
10:7;14:5
**maybe (1)**
7:9

**mean (2)**
10:25;17:19
**meaning (1)**
4:18
**means (2)**
9:22;18:5
**meant (4)**
12:12,14,15;17:22
**medical (1)**
12:20
**meet (1)**
17:22
**mentioned (2)**
17:6;20:18
**might (2)**
13:23;19:6
**misclassification (2)**
10:8,13
**misclassified (2)**
5:7;7:16
**misrepresentation (13)**
6:24;7:1;9:8;10:7;
13:10;20:7,25;21:5;
23:12,15,16;25:16,
19
**misrepresentations (1)**
20:22
**misrepresented (1)**
24:5
**misrepresenting (1)**
21:2
**modified (1)**
17:19
**more (5)**
5:7,25;7:5;11:1;
13:21
**morning (1)**
4:7
**motion (9)**
6:21;15:21,24;
16:4,5,6;23:25;
24:10;25:3
**moved (2)**
15:10,13

**N**

**namely (1)**
18:16
**nature (2)**
23:14,16
**necessarily (1)**
23:1
**need (4)**
10:22,23;20:17;
25:11
**next (1)**
16:2
**non (2)**
8:13;16:1
**nondischargeability (1)**
18:15
**nondischargeable (23)**

5:11;7:1,4,8;9:3,9,
22;13:18,20;14:3;
15:5;18:13;19:20;
20:25;21:3,4;22:12;
23:18;24:9;25:8,16,
20,23
**none (3)**
10:1;12:24;13:1
**nonetheless (1)**
25:11
**nongovernmental (2)**
18:16,19
**normal (1)**
19:9
**normally (1)**
19:4
**note (10)**
20:21,22;23:13,22,
23;24:17;25:3,4,7,7
**noted (1)**
20:1
**notes (1)**
12:7
**note's (1)**
23:25
**Number (3)**
4:2;11:8;12:19

**O**

**obligated (1)**
9:19
**obligation (1)**
18:2
**obligations (2)**
8:22;13:10
**obtaining (1)**
22:11
**Obviously (1)**
13:19
**off (1)**
10:23
**One (5)**
5:5;9:15;10:25;
14:2;17:25
**one-year (1)**
20:16
**ongoing (2)**
10:6;21:22
**online (1)**
10:23,24
**only (3)**
5:13;15:11;23:2
**opinion (1)**
10:7
**opinions (1)**
21:4
**opposite (2)**
7:12,13
**opposition (1)**
23:20
**order (3)**
6:4;10:3;13:18

**original (1)**
10:8
**ors (1)**
17:11
**out (5)**
5:14;16:12,13;
17:7,22
**over (1)**
5:5
**own (2)**
12:7;17:22

**P**

**papers (2)**
7:14;10:12
**paragraph (1)**
24:4
**part (1)**
18:4
**parties (1)**
13:11
**pay (1)**
13:4
**paying (2)**
22:4,6
**people (1)**
10:14
**percent (2)**
26:2,4
**perhaps (1)**
21:1
**person (3)**
6:5;13:23;14:1
**petition (1)**
6:9
**place (1)**
6:16
**plaintiff (6)**
4:6;8:21;9:17,18;
15:19;24:6
**plaintiffs (1)**
21:7
**plaintiff's (7)**
12:14;20:17,20;
22:2,18,18;24:3
**pleading (2)**
22:1;23:14
**please (2)**
4:4;19:25
**pled (1)**
22:15
**plethora (1)**
12:23
**PM (1)**
26:14
**point (5)**
10:20;16:21;17:1,
2;24:19
**position (7)**
7:7;8:7;11:12,16,
18;21:3,7
**positions (1)**

Case 1-15-01038-cec    Doc 36    Filed 11/18/15    Entered 11/18/15 15:07:51

LESLEY CAMPBELL v.                                  Case No. 14-45990-cec; Adv. Case No. 15-01038-cec
CITIBANK, N.A., et al.                                                             November 17, 2015

8:10
**practice (1)**
  13:17
**pre-BAPCPA (1)**
  17:15
**precedent (1)**
  25:22
**prepared (1)**
  6:9
**presumptively (3)**
  9:22;24:9;25:22
**previously (1)**
  18:4
**private (2)**
  18:18,22
**problem (1)**
  7:22
**proceeding (5)**
  6:10;9:25;25:25;
  26:1,2
**proceedings (1)**
  26:14
**proceeds (2)**
  22:1,23
**process (1)**
  25:25
**Promissory (2)**
  24:17;25:4
**prong (1)**
  5:8
**prongs (1)**
  9:15
**properly (2)**
  5:19;10:1
**prosecuting (1)**
  22:11
**protected (3)**
  11:10;12:2,5
**protection (1)**
  25:24
**provide (2)**
  18:9,15
**provision (1)**
  4:18
**provisions (1)**
  4:15
**prudential (2)**
  21:9;22:3
**public (2)**
  20:18,18
**publicly (1)**
  10:20
**pull (2)**
  10:23,24
**purpose (1)**
  14:2
**purposes (1)**
  14:2
**put (2)**
  14:23;20:19

## Q

**qualified (15)**
  11:10,13,22;12:1,
  4,18,24;13:2,3,5;
  17:9,16;18:12,16,20
**quickly (1)**
  23:11

## R

**raised (1)**
  23:20
**rate (2)**
  19:5,11
**read (6)**
  4:10;16:14;17:12,
  14;18:9,23
**really (1)**
  5:4
**reason (1)**
  5:1
**reasonably (2)**
  16:20;18:9
**reasons (1)**
  20:3
**received (1)**
  18:3
**record (2)**
  14:23;24:18
**rectified (1)**
  24:25
**redress (3)**
  22:2,5,24
**redressed (1)**
  21:13
**refer (4)**
  12:12,14,15;18:6
**reference (1)**
  24:21
**reflected (1)**
  7:15
**regardless (1)**
  20:1
**relate (1)**
  4:22
**relating (1)**
  4:18
**relevance (2)**
  4:24,24
**relevant (1)**
  20:20
**reliance (11)**
  5:10,10,17,18;6:3,
  5,6,15,19;14:14,20
**relied (3)**
  5:10;6:12;14:8
**relying (1)**
  14:13
**remaining (1)**
  17:9
**render (1)**
  4:15
**repay (1)**
  18:2

**report (1)**
  17:25
**reports (1)**
  7:15
**represent (2)**
  8:5,21
**representation (7)**
  5:11;6:7,12;9:1,7;
  14:8;23:15
**represented (2)**
  7:6;10:19
**representing (3)**
  9:8,21;14:3
**require (1)**
  25:25
**required (1)**
  17:12
**residency (1)**
  12:20
**respect (5)**
  8:11;9:12;20:5;
  21:6;23:14
**respectfully (2)**
  17:3;20:13
**response (1)**
  24:20
**responsible (1)**
  9:16
**rest (2)**
  4:14,15
**reveal (2)**
  6:23;8:10
**rid (1)**
  5:6
**Right (18)**
  5:21,24;8:22;10:9;
  11:17;13:6;14:22;
  16:8,15,19;17:21,24;
  19:18;22:8,10,25;
  23:9;26:12
**rights (3)**
  6:1,4;25:25
**runner (1)**
  11:8

## S

**saddled (1)**
  9:24
**sale (3)**
  22:1,16,23
**Samantha (1)**
  4:7
**same (3)**
  17:18,19;18:5
**saw (1)**
  19:15
**saying (10)**
  7:11,13;8:25;11:2,
  21;17:21,24;18:21;
  24:14;25:18
**schedule (1)**
  6:9

**scholarship (1)**
  18:3
**schools (1)**
  12:21
**SEC (1)**
  10:21
**second (1)**
  5:7
**secondary (2)**
  13:19;14:4
**Section (4)**
  11:19;16:24;17:7;
  19:14
**securities (1)**
  11:5
**securitized (1)**
  11:5
**seeing (1)**
  6:19
**seek (1)**
  26:2
**seems (2)**
  7:21;8:24
**selling (1)**
  13:17
**sense (4)**
  7:3,5,8;12:17
**separate (3)**
  17:8,16;18:13
**separating (2)**
  17:7,21
**set (1)**
  24:10
**show (4)**
  6:5,5;10:15;14:20
**shows (1)**
  11:3
**simply (2)**
  10:6;24:9
**SMITH (59)**
  4:5,5,25;5:4,12,15,
  18,22,25;6:8,14,17,
  20;7:10,13,19,23;
  8:1,4,9,20;9:2,5,12,
  15;10:5,10,21,24;
  11:4,7,15,24;12:7,
  10,13,17;13:3,9,14,
  16,25;14:9,12,16,19;
  16:3,6;21:21;23:7;
  24:2,13,16,20;25:10,
  17,21;26:8,10
**sold (1)**
  15:18
**solely (1)**
  13:4
**somehow (1)**
  14:8
**someone (1)**
  23:5
**sometimes (1)**
  11:25
**Sorry (1)**
  16:8

**sort (2)**
  9:20;11:25
**speak (1)**
  14:25
**specifically (3)**
  7:4;12:14;15:11
**SquareTwo (2)**
  15:18;23:3
**stand (1)**
  10:18
**standards (1)**
  21:9
**standing (4)**
  4:23;21:8,9;22:3
**state (2)**
  9:12;11:25
**stated (1)**
  21:18,22
**statement (4)**
  20:24;21:12;
  23:17,18
**statistic (1)**
  26:1
**statute (6)**
  7:21;13:2;16:13;
  17:11;18:23;20:16
**still (4)**
  6:21;17:23;21:25;
  23:21
**stipend (1)**
  18:3
**Storefront (1)**
  4:5
**Student (32)**
  4:9,14;8:5,8,21;
  9:21;11:9,13,18;
  12:18;13:18;15:9,
  18;16:11,17,17,23;
  19:1;20:2;24:4,5,8,
  10,15,16;25:4,6,19,
  20,23;26:3,5
**students (2)**
  12:20;26:2
**study (2)**
  15:5,11
**subjected (1)**
  5:1
**submit (1)**
  10:10
**subsection (4)**
  17:7,18,22;18:4
**subsections (1)**
  17:23
**substantively (1)**
  10:8
**sufficient (1)**
  25:2
**suggest (1)**
  5:16
**summary (2)**
  16:5,6
**super (1)**
  19:11

Case 1-15-01038-cec    Doc 36    Filed 11/18/15    Entered 11/18/15 15:07:51

LESLEY CAMPBELL v.                                    Case No. 14-45990-cec; Adv. Case No. 15-01038-cec
CITIBANK, N.A., et al.                                                                November 17, 2015

**superfluous (2)**
    4:15;18:21
**suppose (3)**
    19:5;21:15;24:24
**Supreme (2)**
    24:8;25:22
**survive (1)**
    26:4
**survives (1)**
    25:24
**swallow (1)**
    4:14
**swath (1)**
    15:6

**T**

**talk (1)**
    19:23
**talking (1)**
    21:20
**tax (1)**
    9:19
**telling (4)**
    7:3,6;14:15;19:11
**terminology (1)**
    13:1
**terms (2)**
    5:10;19:10
**test (1)**
    9:15
**Thanks (1)**
    26:12
**therefore (1)**
    12:5
**three (2)**
    15:14,20
**till (1)**
    26:8
**times (1)**
    11:5
**titled (1)**
    24:16
**today (3)**
    14:12;15:8,11
**tolling (3)**
    7:24;9:16;20:6
**took (2)**
    6:6;7:7
**training (1)**
    12:21
**transaction (3)**
    6:13,16;19:7
**trial (1)**
    21:23
**trouble (1)**
    6:19
**true (1)**
    14:5
**trump (1)**
    17:25
**trust (1)**
    12:3

**trusts (2)**
    11:9,25
**truth (6)**
    7:20;8:18;10:11;
    13:7;20:5,15
**truthful (1)**
    10:16
**trying (1)**
    5:6
**two (5)**
    5:5;8:25;15:10;
    17:2,23
**type (2)**
    12:16,17
**types (2)**
    12:23;19:19
**typically (1)**
    19:8

**U**

**Um-hmm (1)**
    18:7
**Um-hum (1)**
    21:24
**under (5)**
    5:7;11:19;14:19;
    16:23;21:8
**undercuts (1)**
    18:13
**understood (3)**
    19:4,8,22
**underwriter (1)**
    11:8
**units (1)**
    17:10
**unjust (5)**
    5:7;13:12,14;21:6;
    22:7
**unjustly (1)**
    22:17
**unless (2)**
    19:4,10
**unsecured (2)**
    13:17,21
**up (2)**
    4:14;10:12
**upon (3)**
    7:25;8:1;26:6

**V**

**value (3)**
    12:10;13:19;14:4
**view (2)**
    4:20;13:7
**violation (3)**
    8:17;10:11;13:8

**W**

**way (5)**
    4:16;5:23;7:5;

    17:15;22:13
**ways (1)**
    11:25
**welcome (1)**
    14:25
**what's (5)**
    5:10;8:19,19;
    14:14;24:7
**Whereupon (1)**
    26:14
**wide (1)**
    15:6
**word (2)**
    18:2;19:3
**words (1)**
    18:2
**work (1)**
    13:15
**worth (1)**
    13:20
**writing (1)**
    4:12

**Y**

**year (2)**
    5:6;15:19
**year-long (1)**
    5:2

**Z**

**zero (1)**
    19:5

**1**

**10-K (1)**
    11:3
**12:19 (1)**
    26:14
**15 (1)**
    24:4

**2**

**2005 (3)**
    4:17;17:5;19:17
**2013 (1)**
    15:19
**22.1d (1)**
    13:4
**27 (1)**
    4:2
**28 (1)**
    4:2

**3**

**3 (2)**
    21:8,11

**5**

**523 (1)**
    16:24
**523a8Aii (1)**
    11:19

**8**

**8-K (1)**
    11:2

**9**

**99.9 (2)**
    26:1,4