UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re                                                                          Case No. 14-45990-CEC

Lesley Campbell
a/k/a Lesley Paige Campbell                                  Chapter 7
a/k/a Lesley P Campbell

                                        Debtor.

-------------------------------------------------------x

Lesley Campbell,

                        Plaintiff

                                                                               Adv. Pro. No. 15-01038-CEC

                    - against -

Citibank, N.A.; The Student Loan
Corporation; Two Square Financial, Inc.;
CACH, LLC; and First Step Group, LLC,

                        Defendants.

-------------------------------------------------------x


DECISION


Appearances:

Catherine M. Pastrikos, Esq.,                    Casey B Howard, Esq.,
Austin C. Smith, Esq.                               Samantha Ingram, Esq.,
Brewer Storefront, PLLC                          Locke Lord LLP
750 Lexington Avenue                               Three Financial Center
14th Floor                                               New York, NY 10281
New York, NY 10022                                *Attorneys for Defendants*
*Attorneys for Plaintiff*


CARLA E. CRAIG

Chief United States Bankruptcy Judge

In this adversary proceeding, plaintiff Lesley Campbell ("Plaintiff" or "Campbell") seeks a determination that funds she borrowed under a CitiAssist Bar Exam Loan ("Bar Loan") in April, 2009 is dischargeable. Citibank, N.A. and The Student Loan Corporation (collectively, "Defendants"), two of the five defendants in this action, seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Rule 7012(b).[1]

In the amended complaint ("Complaint"), Campbell asserts five claims for relief against Defendants.  In counts one and two, Campbell seeks a determination of dischargeability and a declaratory judgment that the Bar Loan is dischargeable. Because the Bar Loan is not an "educational benefit" within the meaning of § 523(a)(8)(A)(ii), and is not encompassed in any other exception to discharge set forth in § 523(a)(8), the Bar Loan is dischargeable, and Defendants' motion to dismiss these claims is denied.

Count four of the Complaint seeks damages, attorneys' fees, and costs for violation of the Truth In Lending Act; count six seeks exemplary damages, attorneys' fees and costs for fraudulent misrepresentation; and count seven seeks disgorgement of unjust enrichment. Because none of these counts states a claim under applicable law, Defendants' motion to dismiss these claims is granted.

## Background

The facts are not in dispute. In April 2009, Plaintiff, then a student at Pace University Law School, applied for and received the Bar Loan in the amount of $15,000. (Mot. to Dismiss, Declaration of Robert Carson ("Carson Decl."), p. 2-3, Adv. Pro. No. 15-01038, ECF 18-2; Carson Decl., Ex. A, Adv. Pro. No. 15-01038, ECF 18-3.)[2] She made payments on the Bar Loan

---

[1] All statutory references are to the United States Bankruptcy Code, 11 U.S.C. et seq. ("Bankruptcy Code" or "Code"), and all Rule references are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

[2] Citations to "ECF" are to documents filed on docket of this proceeding, identified by docket number. Plaintiff's statement in the Complaint that she borrowed $15,900 in February 2009 appears to be a typographical error; the

until June 2012, and in November 2014 she filed a petition for relief under Chapter 7 of the

Bankruptcy Code. (Compl., ¶17, p. 5, Adv. Pro. No. 15-01038, ECF 9;  Case. No. 14-45990,

ECF 1.) In March 2015, Plaintiff received a discharge (Order Discharging Debtor, Case. No. 14-

45990, ECF 10.) In December 2013, the Bar Loan was assigned to defendant Square Two

Financial, Inc., and in March 2015 Campbell filed this adversary proceeding. (Carson Decl.,

¶ 9, p. 3, Adv. Pro. No. 15-01038, ECF 18-2; Adv. Pro. No. 15-01038, ECF 1.)

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b), and the

Eastern District of New York standing order of reference dated August 28, 1996, as amended by

order dated December 5, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## Legal Standard

To overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must set

forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007). In evaluating the complaint, the Court "must accept as true

all of the factual allegations set out in plaintiff's complaint, draw inferences from those

allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory

v. Daly, 243 F.3d 687, 691 (2d Cir.2001) (internal quotation marks omitted).

When deciding a motion under Fed. R. Civ. P. 12(b)(6), the Court must limit its review to

facts and allegations contained in the complaint, documents incorporated into the complaint by

reference or attached as exhibits, any document on which the complaint heavily relies, and

matters of which the Court may take judicial notice. In re Thelen LLP, 736 F.3d 213, 218–19 (2d

---

parties agree that the amount of the loan was $15,000, disbursed in April 2009. (Compl., ¶ 15, p.4-5, Adv. Pro. No. 15-01038, ECF 9; *Cf.* Mem. of Law in Opp'n, p. 2, Adv. Pro. No. 15-01038, ECF 32.)

Cir. 2013); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002); <u>In re Monahan Ford Corp. of Flushing</u>, 340 B.R. 1, 20-21 (Bankr. E.D.N.Y. 2006).

**Discussion**

Plaintiff's Complaint asserts five claims for relief against the moving Defendants. Each will be analyzed in turn.

A. <u>Count One: Determination of Dischargeability and Count Two: Declaratory Judgment</u>

Counts one and two of the Complaint seek a determination of dischargeability, pursuant to Rule 4007, and a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 7001(9), stating that none of the exceptions to discharge set forth in § 523(a)(8) is applicable to the Bar Loan, and that the Bar Loan was therefore discharged by the discharge order in Plaintiff's bankruptcy case. (Compl., ¶¶ 24-32, p. 6-7, Adv. Pro. No. 15-01038, ECF 9.)

Section 523(a)(8) provides, in relevant part:

(a) A discharge under section 727…of this title does not discharge an individual debtor from any debt–
(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
    (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
        (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
    (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;…

11 U.S.C. § 523(a)(8). Defendants do not dispute that the Bar Loan is not excepted from discharge under § 523(a)(8)(A)(i) or § 523(a)(8)(B), and Plaintiff does not claim that the Bar Loan is dischargeable as an "undue hardship" under the standard set forth in <u>Brunner v. New York State Higher Educ. Servs. Corp.</u>, 831 F.2d 395 (2d Cir. 1987). (*See* Mot. to Dismiss, p.5-8, Adv. Pro. No. 15-01038, ECF 18-1; Compl.¶¶ 24-29, p. 6-7, Adv. Pro. No. 15-01038, ECF 9.)

Therefore, the sole question for determination with regard to Defendant's motion to dismiss these two claims is whether the Bar Loan is excepted from discharge under § 523(a)(8)(A)(ii). Since there is no dispute that the Bar Loan constituted an "obligation to repay funds received," only one question is presented: whether the Bar Loan is an "educational benefit" within the meaning of § 523(a)(8)(A)(ii).

"[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (citations and internal quotation marks omitted). Here, however, the statutory text must be read in conjunction with the rest of § 523(a)(8) and the Bankruptcy Code as a whole:

> In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context"). It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," Gustafson v. Alloyd Co., 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), and "fit, if possible, all parts into an harmonious whole," FTC v. Mandel Brothers, Inc., 359 U.S. 385, 389, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959).

Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33, 120 S. Ct. 1291, 1300-01, 146 L. Ed. 2d 121 (U.S. 2000).

In addition, it is axiomatic that exceptions to discharge "should be confined to those plainly expressed," and construed narrowly against the creditor. Kawaauhau v. Geiger, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), (quoting Gleason v. Thaw, 236 U.S. 558, 562, 35

S.Ct. 287, 59 L.Ed. 717 (1915)); <u>In re Furio,</u> 77 F.3d 622, 624 (2d Cir.1996); <u>Household Finance Corp. v. Danns (In re Danns),</u> 558 F.2d 114, 116 (2d Cir.1977).

Some courts have decided without explanation, or assumed, that "educational benefit," as used in § 523(a)(8)(A)(ii), encompasses any loan which relates in some way to education. *See, e.g.,* <u>In re Roy</u>, No. 08-33318, 2010 WL 1523996, at *1 (Bankr. D.N.J. Apr. 15, 2010); <u>In re Skipworth</u>, No. ADV. 09-80149-JAC-7, 2010 WL 1417964, at *2 (Bankr. N.D. Ala. Apr. 1, 2010); <u>In re Carow</u>, No. ADV 10-7011, 2011 WL 802847, at *4-5 (Bankr. D.N.D. Mar. 2, 2011); <u>In re Beesley</u>, No. ADV 12-2444-CMB, 2013 WL 5134404, at *3 (Bankr. W.D. Pa. Sept. 13, 2013). This broad interpretation of the exception to discharge in § 523(a)(8)(A)(ii) would render superfluous most of the other provisions of § 523(a)(8). If the term "educational benefit" includes any student loan, there would be no need to specifically identify, as Congress did in § 523(a)(8)(A)(i) and § 523(a)(8)(B), particular loans, extended by particular lenders, which are excepted from discharge, since § 523(a)(8)(A)(ii), if interpreted to extend to all education-related loans, would swallow both provisions.  The cases which have failed to address this issue, including those relied upon by Defendants, are for this reason unpersuasive.

Section 523(a)(8)(A)(ii) sets forth a list of nondischargeable obligations, as follows: "an obligation to repay funds received as [1] an educational benefit, [2] a scholarship, or [3] a stipend." The canon of statutory construction known as *noscitur a sociis* instructs that when a statute contains a list, each word in that list presumptively has a "similar" meaning. <u>Yates v. United States</u>, 135 S. Ct. 1074, 1089, 191 L. Ed. 2d 64 (2015) (Alito, J., concurring in the judgment) (citing <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 576, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)). To the extent that "educational benefit" (defined nowhere in the Bankruptcy Code) is ambiguous, it should be presumed to have a meaning similar to the other items in the list set

forth in § 523(a)(8)(A)(ii). "Scholarship" and "stipend" both refer to funds which are not generally required to be repaid by the recipient. Therefore, in the absence of plain meaning to the contrary, or compelling legislative history, "educational benefit" must be understood to refer to something other than a loan, especially given that Congress uses the word "loan" elsewhere in § 523(a)(8). The concept which unites the three separate terms in the list in § 523(a)(8)(A)(ii) is that they all refer to types of conditional grants.

  This interpretation is consistent with legislative history. The phrase "educational benefit" first appeared in § 523(a)(8) of the Bankruptcy Code in 1990, as codification of the holding in U.S. Dep't of Health & Human Servs. v. Smith, where the 8th Circuit determined that a conditional grant to a medical student was a nondischargeable loan within the meaning of § 523(a)(8). U.S. Dep't of Health & Human Servs. v. Smith, 807 F.2d 122, (8th Cir. 1986); Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 Before the H. Subcomm. on Econ. and Commercial Law , H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990), (Mr. Brooks' Questions for the Record for Mr. Wortham). In Smith, a medical student received $14,000 in grant money through a federal government program known as the Physician Shortage Area Scholarship Program, on the condition that he practice medicine in an area with a shortage of physicians for three years after graduation from medical school. In re Smith, No. 84-05113, 1985 WL 660512, at *1 (Bankr. D.N.D. June 26, 1985). However, Smith never practiced medicine in an area with a shortage of physicians. U.S. Dep't of Health & Human Servs. v. Smith, 807 F.2d 122, 123 (8th Cir. 1986). Consequently, the Department of Health and Human Services determined that, pursuant to the conditional grant, he owed the government $29,000, representing the funds which had been paid to him pursuant to the grant, plus interest. Id. However, the Bankruptcy Code, as in effect at that time, provided only that "Section 523(a)(8)

makes nondischargeable 'any debt ... for an educational loan made ... by a governmental unit.'"

<u>Id.</u>

Finding that on these facts there was no "loan," both the bankruptcy court and the district court found Smith's financial obligation to the Department of Health and Human Services dischargeable. <u>Id.</u> at 122. The 8th Circuit reversed, holding that the term "loan" could, under the circumstances presented in that case, include the obligation to repay funds owed as a consequence of failing to fulfill the terms of a conditional grant. <u>Id.</u> at 127.

After the 1990 amendments, § 523(a)(8) provided, in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
....
(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or, made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend…

11 U.S.C. § 523 (1990). At the congressional hearing on the 1990 amendments to the Code, Bob Wortham, U.S. Attorney for the Eastern District of Texas, explained:

This section adds to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends. These obligations are often very sizeable and should receive the same treatment as a "student loan" with regard to restrictions on dischargeability in bankruptcy. See <u>U.S. Department of Health and Human Services v. Smith</u>, 807 F.2d 122 (8th Cir. 1986).

Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 Before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990), (Mr. Brooks' Questions for the Record for Mr. Wortham).

After the 1990 amendments went into effect, for-profit lenders argued that loans they made for educational purposes should be excepted from discharge pursuant to the amended

§ 523(a)(8).  For example, a number of bankruptcy courts were required to determine whether loans made by for-profit trucking schools, to their students, were excepted from discharge as "an obligation to repay funds received as an educational benefit." Though these courts generally ruled on the basis that § 523(a)(8) could not be invoked by a for-profit lender, they noted the statutory interpretation issue presented in the instant case. *See e.g.,* In re Meinhart, 211 B.R. 750, 753 (Bankr. D. Colo. 1997) ("Were this Court to accept the Plaintiff's position that the final phrase should be read independently of the former portions of the subsection, the final phrase would subsume the remainder."); In re Jones, 242 B.R. 441, 443-444 (Bankr. W.D. Tenn. 1999) (same); In re McClure, 210 B.R. 985, 988 (Bankr. N.D. Tex. 1997) ("[A]lthough ACT provided a valuable service, the company does not exist solely to provide educational benefits. It exists in order to make its owners a profit…."). As the court explained in In re Scott, 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002):

> If the third provision of section 523(a)(8)[3] were interpreted to mean that all educational loans were excepted from discharge then the first two categories (extending an exception to only governmental entities and nonprofit institutions) would certainly be rendered meaningless and superfluous. […] The third category would subsume the first two provisions and make them completely unnecessary. Such an interpretation is contrary to statutory interpretation and to common sense.
>   The third provision clearly has a plain meaning. It does not need to be construed broadly to except all loans for educational benefits from discharge. The provision grants protection to "obligations to repay funds received as an educational benefit." An example of such an obligation would be for funds provided as grants that must be repaid only under certain conditions (like the failure of a medical student grant recipient to practice in a physician shortage area after graduation).

---

[3] Further revisions were made to § 523(a)(8) throughout the 1990s, which do not impact the analysis of the meaning of "educational benefit." At the time In re Scott was decided, § 523(a)(8) provided that a discharge under § 727 did not discharge an individual from any debt:

> for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, *or for an obligation to repay funds received as an educational benefit, scholarship or stipend,* unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

§ 523(a)(8) (1998) (italics indicate the "third provision" discussed in Scott, 287 B.R. at 474).

Circuit courts have issued opinions which, while not addressing the issue directly, indicate that interpreting the word "benefit" as synonymous with "loan" is inappropriate. In re Segal, 57 F.3d 342, 348-49 (3d Cir. 1995) ("In its continuing effort to prevent …abuses and to protect the solvency of educational loan programs, Congress passed a series of amendments to section 523(a)(8) which extended its reach from educational loans to educational benefits."); In re Udell, 454 F.3d 180, 185-86 (3d Cir. 2006) (finding that the obligation to repay a contingent scholarship was "plainly an educational benefit").

In 2005, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the phrase "an obligation to repay funds received as an educational benefit, scholarship, or stipend" was placed in a separate subsection, and new text was added as § 523(a)(8)(B). There is no reason to conclude that the meaning of the term "educational benefit" was changed as a result of the BAPCPA amendments. Whether designated as (ii), or separated from the rest of the text by a comma and the word "or," a subsection cannot reasonably be interpreted to swallow the rest of the section.

In re Baiocchi, 389 B.R. 828 (Bankr.E.D.Wis.2008), relied upon by Defendants, has been cited for the proposition that the changes to § 523(a)(8) as a result of BAPCPA mean that § 523(a)(8)(A)(ii)  "must be read as encompassing a broader range of educational benefit obligations." *See, e.g.*, In re Roy, No. 08-33318, 2010 WL 1523996, at *1 (Bankr. D.N.J. Apr. 15, 2010) (finding a loan from Sylan Learning Center nondischargeable as an education benefit under § 523(a)(8)(A)(ii)); In re Skipworth, No. ADV. 09-80149-JAC-7, 2010 WL 1417964, at *2 (Bankr. N.D. Ala. Apr. 1, 2010) (finding a loan made to finance bar review study nondischargeable); In re Goldstein, No. 11-81255-MGD, 2012 WL 7009707, at *3 (Bankr. N.D.

Ga. Nov. 26, 2012) (finding private school tuition nondischargeable on the basis of an expansive reading of § 523(a)(8)(A)(ii)).

However, <u>Baiocchi</u> is a case about a conditional grant, with facts analogous to those in <u>Smith</u>, which does not expand the meaning of "educational benefit" in § 523(a)(8)(A)(ii) to encompass commercial or consumer loans.  In <u>Baiocchi</u>, the Debtor worked for a company which reimbursed its employees 50% of the cost of attending school, on the condition that if the employee left the company voluntarily within two years of the reimbursement, the funds had to be repaid. <u>In re Baiocchi</u>, 389 B.R. 828, 829 (Bankr. E.D. Wis. 2008).  After the debtor graduated from school and took a new job within the two years of the tuition reimbursement, the company sued her for return of the funds they had reimbursed, and the bankruptcy court was required to determine if the tuition reimbursement was an obligation encompassed by the exception to discharge in 523(a)(8)(A)(ii). <u>Id.</u> at 829, 832.   Relying on <u>In re Burks</u>, 244 F.3d 1245 (11th Cir. 2001), in which a conditional grant was found to be nondischargeable under the pre-BAPCPA text of §523(a)(8), the court held that the funds which had been reimbursed for tuition on condition of continued service to the company were nondischargeable.  <u>In re Baiocchi</u> at 831-32.

In holding the reimbursement obligation nondischargeable, the <u>Baiocchi</u> court stated that the creation of subsection 523(a)(8)(A)(ii) "must be read as encompassing a broader range of educational benefit obligations." It is clear, however, that the court was referring to an expansion under the statute of the *type* of organization that may provide nondischargeable benefits, not the meaning of the term "educational benefit." <u>In re Baiocchi</u> at 832.

Many courts, citing <u>Baiocchi</u>, have found that as a consequence of the 2005 amendments the category of "educational benefits" excepted from discharge is no longer limited to those

funded, insured or guaranteed by governmental units or non-profits. *See, e.g.*, In re Belforte, No.

10-22742-JNF, 2012 WL 4620987, at *6 (Bankr. D. Mass. Oct. 1, 2012) ("Although

§ 523(a)(8)(A)(i) requires that the loan be made by a governmental unit or nonprofit institution,

§ 523(a)(8)(A)(ii) *no longer* has any such requirement.") (citations omitted) (emphasis added); In

re Roy, 2010 WL 1523996 at *1 ("Under the *current* version of the statute it is immaterial

whether Sylvan is government supported, a school, or a for-profit institution.") (emphasis

added); In re Corbin, 506 B.R. 287, 296 (Bankr. W.D. Wash. 2014) ("Section 523(a)(8) was

amended in 2005 by Congress to make a broader range of student loan debt nondischargeable,

regardless of the nature of the lender.") This is clearly the understanding of Baiocchi that the

court in In re Nunez, 527 B.R. 410, 415 (Bankr. D. Or. 2015), expressed when it rejected

Baiocchi, finding that an "obligation to repay funds received as an educational benefit,

scholarship, or stipend" under § 523(a)(8)(A)(ii) must, in addition, meet one of the requirements

in § 523(a)(8)(A)(i)):

> I see no basis to untether the language in § 523(a)(8)(A)(ii) to apply the student
> loan exception to discharge to "all obligations to repay funds received as an
> educational benefit, scholarship or stipend," without limitation. Such an
> interpretation would render § 523(a)(8)(B), the provision that Congress added to
> § 523(a)(8) in BAPCPA, superfluous and makes no sense. After all, if any
> educational loans of any kind are excepted from discharge by § 523(a)(8)(A)(ii),
> what addition does excepting qualified educational loans under the Internal
> Revenue Code make to the discharge exception? The educational loans excepted
> from discharge under § 523(a)(8)(B) would be no more than a subset of such
> loans already excepted from discharge under § 523(a)(8)(A)(ii). Accordingly, I
> reject the conclusion of some courts that the addition of letter subsection
> identifiers and a semicolon to familiar language in § 523(a)(8) "must be read as
> encompassing a broader range of educational benefit obligations." *See, e.g.,*
> *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi),* 389 B.R. 828, 831–32
> (Bankr.E.D.Wis.2008).

In re Nunez, 527 B.R. at 415.

Baiocchi and Nunez arrived at opposite conclusions regarding whether a nondischargeable "obligation to repay funds received as an educational benefit, scholarship, or stipend" under § 523(a)(8)(A)(ii) must meet one of the requirements of § 523(a)(8)(A)(i); i.e., be "made, insured, or guaranteed by a government unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." Here, however, the determination that the Bar Loan is not encompassed in § 523(a)(8)(A)(ii) is based on the conclusion that "educational benefit," as used in that provision, cannot properly be understood to include a consumer loan such as the Bar Loan. Given the determination that the Bar Loan is not an "educational benefit" under 523(a)(8)(A)(ii), it is unnecessary to decide whether the Nunez court is correct in concluding that nondischargeable obligations under 523(a)(8)(A)(ii) must also involve a governmental unit or nonprofit institution as required by 523(a)(8)(A)(i). For this reason that question is not reached.

In re Skipworth, cited by Defendants, presents facts similar to those of the instant case. In re Skipworth, No. ADV. 09-80149-JAC-7, 2010 WL 1417964, (Bankr. N.D. Ala. Apr. 1, 2010). In Skipworth, citing only Baiocchi, the court found that a bar study loan from Citibank Student Loan Corporation is an "educational benefit" within the meaning of § 523(a)(8)(A)(ii). Id. at *2. However, Skipworth is unpersuasive because it fails to address the problem discussed above: that interpreting "educational benefit" in § 523(a)(8)(A)(ii) so broadly allows § 523(a)(8)(A)(ii) to swallow the rest of § 523(a)(8). In re Roy, , No. 08-33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010), also relied upon by Defendants, is unconvincing for the same reason.[4]

---

[4] The fourth case Defendants point to in their memorandum of law in support of their motion to dismiss (In addition to Baiocchi, Roy and Skipworth) is In re Kesler, 401 B.R. 356, 362 (Bankr. S.D. Ill. 2009). Kesler is inapposite because the court found that the obligation in question was an educational loan by a non-profit organization, and therefore nondischargeable under § 523(a)(8)(A)(i).

Defendants attempt to argue that the Bar Loan can be found nondischargeable without broadening the meaning of § 523(a)(8)(A)(ii) to an extent that would render the rest of § 523(a)(8) superfluous, by asserting that the "educational benefit" in this case can be found in the fact that eligibility for the Bar Loan was dependent on Plaintiff being a law student. (Reply, p.10, Adv. Pro. No. 15-01038, ECF 34.) However, this argument could be advanced by the myriad private lenders who provide funds to borrowers who are taking educational or training courses. *Compare*, <u>In re Scott</u>, 287 B.R. 470 (Bankr. E.D. Mo. 2002), <u>In re Meinhart</u>, 211 B.R. 750 (Bankr. D. Colo. 1997), <u>In re Nunez</u>, 527 B.R. 410 (Bankr. D. Or. 2015). The fact that Defendants' underwriting standards required Plaintiff to be a law student does not turn an arm's-length consumer credit transaction into a "benefit" within the meaning of § 523(a)(8)(A)(ii).

The legislative history and legislative purpose of § 523(a)(8) buttresses the conclusion that a consumer loan such as the Bar Loan is not what is meant by "benefit." The original impetus for including an exception to discharge for education loans made by the government was the concern that if debtors were allowed to discharge such loans, the solvency of government education loan programs would be undermined, in effect "discriminating against future students, because there will be no funds available for them to get an education." <u>In re Pelkowski</u>, 990 F.2d 737, 742 (3d Cir. 1993) (quoting 124 Cong.Rec. 1791–9  Representative Ertel); <u>In re Alibatya</u>, 178 B.R. 335, 340 (Bankr. E.D.N.Y. 1995) ("The congressional purpose in enacting § 523(a)(8) was to safeguard the financial integrity of the education loan programs…") (citing Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–230, 93rd Cong., 1st Sess., Pt. 1, 176–77; S.Rep. No. 96–230, 96th Cong., 1st Sess. 3 (1979); 125 Cong.Rec. S9160 (daily ed. July 11, 1979) (statement of Sen. DeConcini)); <u>In re Renshaw</u>, 222 F.3d 82, 86-

88 (2d Cir. 2000); *see generally* <u>In re Johnson</u>, 218 B.R. 449, 451-54 (B.A.P. 8th Cir. 1998). In

<u>Smith</u>, the 8th Circuit explained:

> In a House Report leading to the enactment of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, Congress recognized the unique nature of educational loans:
>
> > "[E]ducational loans are different from most loans. They are made without business considerations, without security, without cosigners, and relying for repayment solely on the debtor's future increased income resulting from the education. In this sense, the loan is viewed as a mortgage on the debtor's future. In addition, there have been abuses of the system by those seeking freedom from educational debts without ever attempting to repay."
>
> H.R.Rep. No. 595, 95th Cong., 2d Sess. 133, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6094.

<u>U.S. Dep't of Health & Human Servs. v. Smith</u>, 807 F.2d 122, 125-26 (8th Cir. 1986). These

considerations are simply not relevant when the loan at issue is a consumer loan extended by a

for-profit actor. Defendants' Bar Loan application describes itself as a "consumer credit

application" and states that "applications are evaluated through a credit-scoring model. A

satisfactory credit history will be viewed favorably, but does not guarantee the loan application

will be approved." (Carson Decl., Ex. A, Adv. Pro. No. 15-01038, ECF 18-3.) In this way, the

Bar Loan differs significantly from government guaranteed loans and conditional grants, which

are often made available to students without regard to their credit scores or other underwriting

considerations.

This is not to say that only conditional grants can constitute an educational benefit under

§ 523(a)(8)(A)(ii). The precise contours of this exception need not be decided today. In this case,

the Bar Loan, a product of an arm's-length agreement on commercial terms, is not an

"educational benefit" under § 523(a)(8)(A)(ii). Therefore, Defendants' motion to dismiss counts one and two of the Complaint is denied.

B.  Count 4: Violation of the Truth In Lending Act, Count 6: Fraudulent Misrepresentation, and Count 7: Unjust Enrichment

The claims asserted in counts four, six and seven of the Complaint are property of the bankruptcy estate, and unless these claims are abandoned, they can only be asserted by the Chapter 7 Trustee. Mendelsohn v. Ozer, 241 B.R. 503, 506-07 (E.D.N.Y. 1997) ("The filing of a Report of No Distribution is insufficient proof of a conscious abandonment of an asset."); Hernandez v. Downey S&L Ass'n, 2009 U.S. Dist. LEXIS 21495, *1, 2009 WL 704381 (S.D. Cal. Mar. 17, 2009) (Truth in Lending Act claims were property of the bankruptcy estate). Nevertheless, because these claims are baseless, it is appropriate to dismiss them on the merits.

1.  Count Four: Violation of the Truth in Lending Act.

Plaintiff asserts a claim under two sections of the Code of Federal Regulations which elaborate the Truth In Lending Act ("Regulation Z"), 12 C.F.R. 226.17(c) and 12 C.F.R. 226.46(e)(1). (Compl. ¶¶ 40-44, p. 8-9, Adv. Pro. No. 15-01038, ECF 9.)

12 C.F.R. 226.17(c)(1) provides that "[t]he disclosures shall reflect the terms of the legal obligations between the parties," and  12 C.F.R. 226.46(e)(1) provides: "Basis of disclosures and use of estimates–(1) Legal Obligation. Disclosures shall reflect the terms of the legal obligation between the parties."

Plaintiff has asserted that Defendants have misrepresented the legal obligations between the parties by representing that the Bar Loan is a nondischargeable loan, when in fact it is dischargeable. In this case, there is no occasion to decide whether such a misrepresentation could allow a plaintiff to state a claim under the Truth in Lending Act, because Defendants never made any representation to Plaintiff regarding dischargeability. Plaintiff asserts that such a

representation was made because the promissory note was titled "Master Student Loan Promissory Note," even though the promissory note makes no mention of dischargeability in bankruptcy.  (Carson Decl., Ex. B, Adv. Pro. No. 15-01038, ECF 18-4.) The only mention of bankruptcy in the promissory note (aside from references, not relevant here, in the arbitration clause) is that filing for bankruptcy (or the filing of an involuntary bankruptcy proceeding against the borrower) constitutes an event of default. (Carson Decl., Ex. B, Adv. Pro. No. 15-01038, ECF 18-4.)

To say that titling a promissory note "Master Student Loan Promissory Note" constitutes an assertion of the parties' legal rights with regard to a discharge in bankruptcy is inconsistent with § 523(a)(8), which does not except from discharge all student loans.  Two subsections of § 523(a)(8) deal specifically with student loans. In the absence of hardship, § 523(a)(8)(A)(i) excepts from discharge "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution," and § 523(a)(8)(B) excepts "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual." Simply calling the Bar Loan a student loan is not a declaration that the Bar Loan comes within the ambit of these provisions, and says nothing about the dischargeability of the Bar Loan in bankruptcy.

Because Plaintiff has failed to plead facts sufficient to establish that Defendants have misrepresented the legal obligations of the parties, Defendants' motion to dismiss Plaintiff's claim for a violation of the Truth in Lending Act is granted, and the claim is dismissed.

2.  Count Six: Fraudulent Misrepresentation

Plaintiff asserts a claim for fraudulent misrepresentation based on Defendants'

representation that the Bar Loan was a nondischargeable student loan. (Compl. ¶¶ 50-57, p. 9-10,

Adv. Pro. No. 15-01038, ECF 9.) "[I]n a claim for fraudulent misrepresentation, a plaintiff must

allege 'a misrepresentation or a material omission of fact which was false and known to be false

by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance

of the other party on the misrepresentation or material omission, and injury.'" Mandarin Trading

Ltd. v. Wildenstein, 16 N.Y.3d 173, 178, 944 N.E.2d 1104, 1108 (2011) (citing Lama Holding

Co. v. Smith Barney, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)). In order

for Plaintiff to state a claim for fraudulent misrepresentation on the facts of this case, she would

need to allege that she relied on the fact that she believed this loan was nondischargeable when

she entered into it. Because a nondischargeable loan is obviously less favorable to the borrower

than one which is dischargeable in bankruptcy, it is not plausible that Plaintiff  relied on a

representation that the loan was nondischargeable when making her decision to borrow. Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) (facts

must be alleged sufficient to "state a claim for relief that is plausible on its face").

Because Plaintiff has not alleged facts sufficient to satisfy the elements of a claim for

fraudulent misrepresentation, Defendants' motion to dismiss with respect to this claim is granted,

and this claim is dismissed.

3.  Count Seven: Unjust Enrichment

In order to "prevail on a claim for unjust enrichment in New York, a plaintiff must

establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and

good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield

of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted). A plaintiff must allege that "it conferred a benefit upon defendants and that defendants will obtain such benefit without adequately compensating plaintiff." Lake Erie Distributors, Inc. v. Martlet Importing Co., 221 A.D.2d 954, 956, 634 N.Y.S.2d 599, 601 (1995) (citation and internal quotation marks omitted).

Here, Plaintiff does not allege that she conferred a benefit on Defendants for which she has not been compensated. Rather, Plaintiff alleges that Defendants were enriched when they sold the Bar Loan on the secondary market because, allegedly, the purchase price they received was enhanced by the assertion that the Bar Loan was nondischargeable. (Compl. ¶¶ 58-45 (sic), p.10-11, Adv. Pro. No. 15-01038, ECF 9.) However, Plaintiff cannot state a cause of action for unjust enrichment by alleging that the Defendants were unjustly enriched at the expense of the third party purchaser. Fid. Nat. Title Ins. Co. v. N.Y. Land Title Agency LLC, 121 A.D.3d 401, 403-04, 994 N.Y.S.2d 76, 80 (1st Dept. 2014) (citing ABN AMRO Bank, N.V. v. MBIA Inc., 17 N.Y.3d 208, 221, 229, 928 N.Y.S.2d 647, 952 N.E.2d 463 (2011)). An award of damages as a result of an unjust enrichment claim is limited to restitution of the sum improperly received by the defendant from the plaintiff. Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 534 (S.D.N.Y. 2011) (citing U.S. ex rel. Taylor v. Gabelli, No. 03-CV-8762 (PAC), 2005 WL 2978921, at *4 (S.D.N.Y. Nov. 4, 2005) ("Damages typically focus on the plaintiff and provide 'make-whole,' compensatory monetary relief; restitution, by contrast, concentrates on the defendant—preventing unjust enrichment, disgorging wrongfully held gains, and restoring them to the plaintiff.")

In this case, Plaintiff does not allege that Defendants improperly received any funds from her; rather, the injury she claims is that she "[w]as forced to bear the legal and financial consequences of the Defendants' misrepresentation." (Mem. of Law in Opp'n, p. 15-16, Adv.

Pro. No. 15-01038,  ECF 32.) This is insufficient to state a claim for unjust enrichment, and Defendants' motion to dismiss with respect to this claim is granted.

**Conclusion**

For the reasons set forth above, Defendants' motion to dismiss with regard to counts one and two of the Complaint is denied. Defendants' motion to dismiss with regard to counts four, six and seven of the Complaint is granted, and these claims are dismissed. A separate order will issue.



**Dated: Brooklyn, New York**
**March 24, 2016**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**